743 F.2d 1056
 53 USLW 2186, 20 Ed. Law Rep. 51
 Scott CHAPMAN, Appellant,
v.
Joab L. THOMAS, individually; Thomas H. Stafford,
individually, Appellees.
and
Joab L. Thomas as Chancellor of North Carolina State
University; Thomas H. Stafford, as Vice Chancellor of
Student Affairs, North Carolina State University; the
greater University of North Carolina; and North Carolina
State University, Defendants.
 No. 83-2191.
 United States Court of Appeals,
Fourth Circuit.
 Argued July 12, 1984.
Decided Sept. 19, 1984.
 
 Dean A. Shangler, Durham, N.C. (Loflin & Loflin, Durham, N.C., on brief), for appellant.
 Thomas J. Ziko, Asst. Atty. Gen., Raleigh, N.C. (Rufus L. Edmisten, Atty. Gen., Edwin M. Speas, Jr., Sp. Deputy Atty. Gen., Raleigh, N.C., on brief), for appellees.
 Before PHILLIPS, MURNAGHAN and ERVIN, Circuit Judges.
 JAMES DICKSON PHILLIPS, Circuit Judge:
 
 
 1
 Scott Chapman, a student at North Carolina State University (NCSU),[1] appeals from a judgment of the United States District Court for the Eastern District of North Carolina granting the defendant's motion for summary judgment. The district court held that NCSU's policy prohibiting door-to-door solicitation in its dormitories did not unconstitutionally interfere with the exercise of Chapman's first amendment rights. Finding no error, we affirm the judgment of the district court.
 
 
 2
 * The undisputed facts are as follows. Prior to June of 1980 the University Solicitation Policy (the Policy) imposed a total prohibition on door-to-door solicitation in university dormitories. The policy was revised in the spring of 1980 to establish a narrow exception for some student government office candidates. Under the revised policy, candidates for the student government offices of president, president of the senate, and treasurer were allowed to campaign door-to-door during a two-week period prior to the elections. The revised policy went into effect in June of 1980. This exception was removed from the policy in December of 1980 when a total ban on solicitation was reinstated. Because the student elections for the 1980 academic year were held prior to the effective date of the revised policy excepting student politicians, the challenged exception was never actually implemented.
 
 
 3
 While a student at NCSU, Chapman was a member of the Church of Christ, a fundamentalist, evangelical Christian church. In the summer of 1980, Chapman, in accordance with the tenets of his faith, sponsored a series of Bible discussions on the NCSU campus. In order to encourage attendance, Chapman went from door to door in various dormitories informing fellow students of the planned Bible discussions. After receiving complaints from several students, NCSU officials informed Chapman that his activities violated the policy prohibiting door-to-door solicitation by anyone except certain student candidates for campus offices. When Chapman refused to cease solicitation, he was threatened with expulsion and subjected to an action initiated by the NCSU judicial system. Because witnesses produced by the University failed to identify Chapman as one of the solicitors, the charges were dismissed.
 
 
 4
 Chapman commenced the present action under 42 U.S.C. Sec. 1983 in November of 1980 claiming, in part, that the policy violated his first amendment rights of freedom of speech and religion on the grounds that it granted candidates for student government offices the right to campaign door-to-door in student dormitories while prohibiting door-to-door solicitation for religious purposes.[2] The district court granted summary judgment for the defendants. This appeal followed.
 
 II
 
 5
 In Perry Education Association v. Perry Local Educators' Association, 460 U.S. 37, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983), the Supreme Court held that "[t]he existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue." In determining the constitutionality of state restrictions on the exercise of first amendment rights on public property, three categories of public property, each subject to a different standard, must be considered. Id. at 954-55.
 
 
 6
 The first category includes traditional public forums such as streets and parks "which by long tradition or by government fiat have been devoted to assembly and debate ...." Id. at 954. The state's power to restrict first amendment activities in public forums is severely limited. All communicative activity may not be prohibited. "For the state to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." Id. at 955. Content-neutral time, place, and manner restrictions may be enforced if significant government interests are served, the restrictions are narrowly drawn, and ample alternative channels of communication are provided. Id.
 
 
 7
 Public property not in the first category that is, however, opened to the public by the state as a forum for expressive activity comprises the second category. Although the state is not constitutionally required to open such facilities to the public, if it chooses to do so, the state then "is bound by the same standards as apply in a traditional public forum." Id.
 
 
 8
 The third category consists of public property which is neither a traditional nor a designated public forum. These nonpublic forums are governed by different standards. Id. Not only may the state enforce reasonable time, place, and manner restrictions, but "the state may [also] reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because the public officials oppose the speaker's view." Id. In Perry, the Court held that
 
 
 9
 Implicit in the concept of nonpublic forum is the right to make distinctions in access on the basis of subject matter and speaker identity. These distinctions may be impermissible in a public forum but are inherent and inescapable in the process of limiting a nonpublic forum to activities compatible with the intended purpose of the property. The touchstone for evaluating these distinctions is whether they are reasonable in light of the purpose which the forum at issue serves. (Footnote omitted.) Id. at 957.
 
 
 10
 [W]hen government property is not dedicated to open communication the government may--without further justification--restrict use to those who participate in the forum's official business. Id. at 959.
 
 
 11
 We now turn to the application of these principles to the present case.
 
 III
 
 12
 The public property at issue here, residential areas of dormitories located on the campus of a state institution of higher learning, which has not by tradition or designation ever constituted a public forum for communicative purposes must be placed in the category of nonpublic forums.[3] This being so, the standard by which the university's policy between June and December of 1980 banning door-to-door solicitation with a narrow exception for candidates for the three highest student government positions must be evaluated is one of reasonableness. The issue is whether, in light of the purpose which these residential areas serve, the distinction between religious and political solicitation is reasonable and "not an effort to suppress expression merely because [of opposition to] the [religious] speaker's view." Perry, at 955. For the reasons that follow, we conclude that the university's selective solicitation policy was reasonable, and therefore, the appellant's constitutional rights were not violated.
 
 
 13
 First off, there can be no doubt that the university had a legitimate interest in protecting students in its residential dormitories from unwanted, indiscriminate door-to-door solicitation by whoever might choose to descend uninvited upon them at whatever time and for whatever purpose. The question goes only to the selectivity of the policy adopted to further this undoubtedly legitimate general interest.
 
 
 14
 Looking to the selectivity feature, and focussing upon the ultimate distinction it made between political and religious solicitation as put in direct issue by plaintiff's challenge, we find the policy a constitutionally reasonable one. It reflected a more particularized legitimate interest of the university in promoting student participation in student government. That interest is real, not fanciful, and goes far beyond mere indulgence in another voluntary extracurricular student activity. Student government by law and custom on this state university campus has an important structural role in the state's administration of this important agency. Student government is a mandatory student organization, the only one that includes every student. The student government organization has legal authority to process student disciplinary actions and to impose sanctions, including a recommendation of expulsion, upon students. Further, the student body president, as a matter of statute, sits on the university board of trustees. See N.C.G.S. Sec. 116-31(d).
 
 
 15
 To further this legitimate interest in encouraging responsible and effective participation in student government political activity, the challenged exception was narrowly drawn both in terms of those freed up from the general ban on solicitation and in terms of the time period in which it could be invoked. Only those candidates for the three highest positions in student government, president, president of the senate, and treasurer, were covered by the exception. Door-to-door campaigns by those candidates could be engaged in for only a two-week period prior to the election.
 
 
 16
 The university's selective solicitation policy did not prohibit all solicitation by appellant within residence halls. Solicitation in the lobbies and waiting parlors of the dormitories and fraternity houses was permitted by the policy. Upon express invitation, the appellant could also carry on his activities in the individual rooms of students.
 
 
 17
 We, therefore, conclude that the selective solicitation policy was reasonable and not aimed at suppressing appellant's speech merely because of opposition to his views. The judgment of the district court is therefore affirmed.
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 North Carolina State University is a constituent institution of the University of North Carolina and is located in Raleigh, North Carolina. N.C.G.S. Sec. 116-4 (1978)
 
 
 [2]
 This action was initiated as a class action for damages and permanent injunctive relief against the state agencies named as defendants and against the two university officials named as defendants in both their official and individual capacities. The damage claim against the university and its officers in their official capacities was dismissed by an interlocutory order which was not appealed. The claim for permanent injunctive relief against any prohibition of solicitation by appellant was also dismissed by an interlocutory order that was earlier appealed and affirmed in an unpublished opinion of this court. Chapman v. Thomas, et al., 711 F.2d 1050 (4th Cir.1983). Because the record was not then clear as to the actual implementation of the short-lived selective policy, the district court declined at that time to dismiss the claim insofar as it related to the selective policy for the period of its duration. The court later, however, granted summary judgment for the remaining defendants on that aspect of the claim as well, and it is that order which alone is before us on this appeal. As to it, the claim for injunctive relief is of course now moot, but appellant presses the claim for declaratory and monetary relief
 
 
 [3]
 The district court, in its June 14, 1982, order, found that the residential areas of dormitories were nonpublic forums. That decision was affirmed by this court in an unpublished opinion, Chapman v. Thomas, et al., 711 F.2d 1050 (4th Cir.1983)