**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Marsha B. KOKINDA and Kevin E.
Pearl, Defendants–Appellants,**

**Christian Advocates Serving Evangelism;
Project for Public Spaces, Inc.,
Amicus Curiae.**

**No. 87–5107.**

United States Court of Appeals,
Fourth Circuit.

Argued March 7, 1988.

Decided Jan. 31, 1989.
Rehearing and Rehearing In Banc
Denied April 14, 1989.

Jay Alan Sekulow (Mary W. Ebel, on brief), for appellants.

Hollis Raphael Weisman, Asst. U.S. Atty. (Breckinridge L. Willcox, U.S. Atty., Washington, D.C., on brief), for appellee.

(R. David Pembroke, Baltimore, Md., David Sondheimer, on brief) for amici curiae.

Before WIDENER, MURNAGHAN and WILKINSON, Circuit Judges.

WILKINSON, Circuit Judge:

Marsha Kokinda and Kevin Pearl appeal their convictions for soliciting contributions on the sidewalk in front of the Bowie, Maryland post office in violation of postal service regulation 39 C.F.R. § 232.1(h) (1986). Because we believe that the post office sidewalk constitutes a public forum and that the postal regulation is neither a reasonable manner restriction nor narrowly tailored to protect First Amendment values, we hold 39 C.F.R. § 232.1(h) an unconstitutional infringement upon defendants' rights. No significant government interest has been demonstrated that would be narrowly accommodated by eliminating an entire category of political speech from this public forum. The convictions of these defendants are therefore reversed.

### I.

Marsha Kokinda and Kevin Pearl are volunteers for the National Democratic Policy Committee. On August 6, 1986, they set up a table on the sidewalk in front of the Bowie, Maryland post office. There they solicited contributions and distributed literature addressing a variety of political issues.

During the course of the day, Kokinda and Pearl attempted to speak with post office patrons. They distributed National Democratic Policy Committee literature, solicited contributions to their political organization, and solicited subscriptions to its newspaper, New Solidarity. They placed posters around the table and set their literature on top of it. The literature included pamphlets, books, and magazines discussing such issues as the "AIDS cover-up" and the testing of "Congress for Cocaine."

The sidewalk on which appellants set up their table is approximately seven feet wide and is located on postal service property. The sidewalk runs in front of the Bowie post office and postal patrons must use this walkway to enter the building. A post office parking lot is contiguous to the sidewalk and both the parking lot and post office building itself are set back from a public road. A municipal sidewalk abuts the public road, runs in front of the parking lot, and is. parallel to the post office sidewalk.

After seeing defendants' table and their literature and receiving complaints from postal customers, Postmaster Larry Poe of the Bowie post office asked Kokinda and Pearl to leave postal property. When they refused, the Postmaster returned with Postal Inspector Julius Cochran. Defendants again refused to leave and were arrested; their table and its contents were seized.

Kokinda and Pearl were charged with solicitation of contributions on postal service property, 39 C.F.R. § 232.1(h); refusal to comply with the lawful directions of postal authorities to leave postal service property, 39 C.F.R. § 232.1(d); and refusal to leave the grounds of a public building, Md.Code Ann. Art. 27, § 577A (1987) and 18 U.S.C. §§ 7 & 13. Appellants were convicted on the first two counts before a magistrate. Kokinda received ten days imprisonment and a $50.00 fine; Pearl thirty days and a $100.00 fine. Pearl's sentence was suspended and he was placed on nine months probation. Appellants appealed their convictions to the United States District Court for the District of Maryland.

There they challenged, *inter alia*, the constitutionality of the federal regulation prohibiting solicitation on postal service property. This regulation provides in relevant part:

> Soliciting alms and contributions, campaigning for election to any public office, collecting private debts, commercial soliciting and vending, and displaying or distributing commercial advertising on postal premises is prohibited.

39 C.F.R. § 232.1(h) (1986). The district court rejected the First Amendment challenge to the regulation and affirmed the convictions. Kokinda and Pearl appeal.

## II.

Nearly a half century ago, Justice Roberts, writing in *Hague v. C.I.O.*, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939) (opinion of Roberts, J.), recognized the venerable role that public streets and parks had come to play in the dissemination of ideas.

> Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. Such use of the streets and public places has, from ancient times, been a part of the privileges, immunities, rights, and liberties of citizens. The privilege of a citizen of the United States to use the streets and parks for communication of views on national questions may be regulated in the interest of all; it is not absolute, but relative, and must be exercised in subordination to the general comfort and convenience, and in consonance with peace and good order; but it must not, in the guise of regulation, be abridged or denied.

*Id.* at 515–16, 59 S.Ct. at 964.

Sidewalks too are presumptively public forums. The peaceful expression of protest on the streets and sidewalks of this country have effectively brought issues of social import to public attention. The sidewalks have hosted groups which were pro-life and pro-choice, sloganeers on Contra aid and South African apartheid, and those who would bring the issues of drug abuse or POW's, acid rain or SDI into public view. What the debate has lacked in decorum, it has supplied in vitality, and it is important to the dialogue of a democratic system. Without the streets and sidewalks, there might have been no civil rights movement, and it is no coincidence that the expressions of that era focused upon public buildings where the spectacle of official lawlessness was most in evidence. The First Amendment precedent of that time reflects the number, variety, visibility, and effectiveness of those demonstrations and the protection to which sidewalk speech is entitled. *See, e.g., Edwards v. South Carolina*, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963) (civil rights march and demonstration by 187 black students on state house grounds); *Cox v. Louisiana*, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965) (march by 2,000 black students on public sidewalks to courthouse and demonstration on sidewalk opposite courthouse); *Shuttlesworth v. Birmingham*, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969) (march by 52 black citizens on public sidewalks to protest denials of civil rights); *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972) (peaceful picketing to protest race discrimination on sidewalk adjoining school).

This case, of course, is a far cry from those of the 1960's. It presents a calmer time, a less disadvantaged class of defendants, more reasonable actions on the part of those in authority, and a public edifice of little symbolic import. Yet there remains a price to be paid for declaring sidewalks off bounds to political solicitation and speech. Today the sidewalk may harbor the religious dissenter, the cultural iconoclast, the political maverick; tomorrow it may stage a movement of social protest whose message no one can foresee. Thus, sidewalks should remain available for speakers whose access to the public's ear and pursestring would otherwise be incomplete.

Kokinda and Pearl solicited subscriptions to the National Democratic Policy Commit-

tee's newspaper, New Solidarity. They also had available literature warning of an economic "blow out," calling for an end to the "AIDS cover-up," and discussing the problems of drug abuse in government. Theirs was classic political speech pursued peacefully in a place that "traditionally ha[s] been held open to the public for expressive activities and [is] clearly within those areas of public property that may be considered, generally without further inquiry, to be public forum property." *United States v. Grace*, 461 U.S. 171, 179, 103 S.Ct. 1702, 1708, 75 L.Ed.2d 736 (1983); *see Boos v. Barry*, —— U.S. ——, ——, 108 S.Ct. 1157, 1162, 99 L.Ed.2d 333 (1988).

### III.

■ Whatever the general properties of sidewalks, the government contends that this particular sidewalk is not a public forum. We do not find its characterization of this sidewalk persuasive.

The walkways in front of the Bowie post office, like those surrounding foreign embassies, *Boos*, 108 S.Ct. at 1161; the Supreme Court, *Grace*, 461 U.S. at 173, 103 S.Ct. at 1705; or state capital grounds, *Edwards*, 372 U.S. at 235, 83 S.Ct. at 683; serve the primary function of safely accommodating pedestrian traffic. These sidewalks may, however, accommodate other uses simultaneously, including use as a forum for the peaceful expression of political views. *See* Cass, *First Amendment Access to Government Facilities*, 65 Va.L. Rev. 1287, 1338–39 (1979). It ill behooves us to undertake too intricate a task of designation, holding this sidewalk public and that one not. We recognize that other circuit courts have held that non-municipal post office sidewalks do not constitute public fora. *Monterey County Democratic Central Committee v. United States*, 812 F.2d 1194 (9th Cir.1987); *United States v. Belsky*, 799 F.2d 1485 (11th Cir.1986); *United States v. Bjerke*, 796 F.2d 643 (3d Cir.1986). But such labeling loses sight of the fact that most sidewalks are designed as outdoor public thoroughfares and that citizens should not be left to wonder at which ones they will be permitted to speak and which ones not.

First Amendment activities, conducted on busy pedestrian walkways such as this one, may cause some inconvenience to the flow of traffic. It is, however, the volume of traffic that makes sidewalks a particularly public and therefore appealing forum for public discourse. Surely congestion and inconvenience are not the end of the matter. The First Amendment requires that society tolerate some inconvenience in public forums to protect the values of free expression. If expressive activities were limited to the corners of parks where no one goes, there would be no public forum doctrine.

A municipal sidewalk runs along the street on which the Bowie post office is located. The government agrees that the municipal sidewalk is a public forum, though it is hardly a viable alternative forum, since passing motorcars are not an inviting audience for speech or solicitation. The government contends that the municipal sidewalk and the post office sidewalk are distinguishable since the latter is set back from the street, designated government property, and dedicated to post office use. But the fact that the walkway at issue here happens to be located on property owned by the federal postal service does not alone change its public forum character.

Absent from the post office sidewalk is the special need for security and discipline associated with the confines of a military reservation, *Greer v. Spock*, 424 U.S. 828, 838, 96 S.Ct. 1211, 1217, 47 L.Ed.2d 505 (1976); the curtilage of a jail, *Adderley v. Florida*, 385 U.S. 39, 41, 87 S.Ct. 242, 244, 17 L.Ed.2d 149 (1966); or the parking lot of a school, *Grattan v. Board of School Comm'rs of Baltimore City*, 805 F.2d 1160, 1163 (4th Cir.1986). "[T]he government [may not] transform the character of [public forum] property by the expedient of including it within the statutory definition of what might be considered a nonpublic forum parcel of property." *Grace*, 461 U.S. at 180, 103 S.Ct. at 1708. Nor can a public forum be eliminated by the expedi-

ent of placing a parking lot between it and the public street. *See National Socialist White People's Party v. Ringers*, 473 F.2d 1010, 1015 (4th Cir.1973) (en banc). If "the mere presence of a parking area between the street and a sidewalk limits our scrutiny of speechrelated regulations to the standard for nonpublic fora, we issue an open invitation for government architects and landscapers to surround public buildings with modern-day moats." *Bjerke*, 796 F.2d at 654–55 (Higginbotham, J., dissenting). The First Amendment is not consigned to the mercies of architectural chicanery, nor may a federal agency, simply by designating a sidewalk its own, spare itself the inconvenience of political protest and speech. *See United States Postal Service v. Greenburgh Civic Ass'ns*, 453 U.S. 114, 133, 101 S.Ct. 2676, 2687, 69 L.Ed.2d 517 (1981).

## IV.

■ Time, place, and manner restrictions are the means whereby the balance between expressive activity and public convenience is struck. In striking this balance, the fact that communication is involved weighs heavily. *Grayned v. City of Rockford*, 408 U.S. 104, 116, 92 S.Ct. 2294, 2303, 33 L.Ed.2d 222 (1972); *Schneider v. State*, 308 U.S. 147, 160–61, 60 S.Ct. 146, 150–51, 84 L.Ed. 155 (1939); Kalven, *The Concept of the Public Forum: Cox v. Louisiana*, 1965 Sup.Ct.Rev. 1, 16–18. To further a "significant government interest" the state may, in a public forum, enforce content neutral regulations of the time, place, and manner of speech. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983); *Grace*, 461 U.S. at 177, 103 S.Ct. at 1707. Even content neutral regulations of the time, place, and manner of expression must be narrowly tailored, however, and must leave open alternative channels of communication. *See Frisby v. Schultz*, ── U.S. ──, ──, 108 S.Ct. 2495, 2500, 101 L.Ed.2d 420 (1988) (*citing Perry* 460 U.S. at 45, 103 S.Ct. at 1706). Insofar as 39 C.F.R. § 232.1(h) bans all solicitation from post office sidewalks, it offends the First Amendment for it is neither a reasonable manner restriction nor is it narrowly drawn to accomplish a significant government interest.

Solicitation, like leafletting, is an expressive activity and, as such, is within the protection of the First Amendment. *Cornelius v. NAACP Legal Defense & Educational Fund, Inc.*, 473 U.S. 788, 797–99, 105 S.Ct. 3439, 3446–47, 87 L.Ed.2d 567 (1985); *Heffron v. International Soc'y for Krishna Consciousness*, 452 U.S. 640, 647, 101 S.Ct. 2559, 2563, 69 L.Ed.2d 298 (1981); *Village of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632, 100 S.Ct. 826, 833, 63 L.Ed.2d 73 (1980). Furthermore, we are dealing here with political and not commercial speech. The National Democratic Policy Committee seeks to inform the public of its views on a variety of political, social, and cultural issues. The effective dissemination of such views may be costly. Therefore, "solicitation is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues, and ... without solicitation the flow of such information and advocacy would likely cease." *Schaumburg*, 444 U.S. at 632, 100 S.Ct. at 834.

The ban on solicitation here does not constitute a reasonable manner restriction. The Supreme Court has in fact warned that regulations prohibiting an entire category of expression will often fail to withstand constitutional scrutiny. *See, e.g., Grace*, 461 U.S. at 182–83, 103 S.Ct. at 1709–10 (total ban on display of "flags, banners, or devices" on sidewalk around Supreme Court not justified to preserve decorum and appearance of independence of Court); *Schaumburg*, 444 U.S. at 637, 100 S.Ct. at 836 ("measures less intrusive than a direct prohibition on solicitation" can be instituted to prevent fraudulent misrepresentation by solicitors); *Schneider*, 308 U.S. at 162, 60 S.Ct. at 151 (absolute prohibition on distribution of literature on public streets not justified to prevent littering). In contrast, regulations that limit a particular type of communication to accommodate both the speech and a significant government inter-

est have been upheld. *See, e.g., Frisby,* 108 S.Ct. at 2500–01 (prohibiting picketing in front of a single residence, but not general marching through a residential neighborhood); *Heffron,* 452 U.S. 640, 101 S.Ct. 2559 (requiring solicitation on fairgrounds to be conducted from booths to ensure orderly movement of crowd); *Grayned,* 408 U.S. 104, 92 S.Ct. 2294 (prohibiting only those demonstrations that disrupt normal school activities); *Kovacs v. Cooper,* 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949) (prohibiting only those "sound trucks" that emit "loud and raucous noises").

The critical distinction for First Amendment purposes is not between leafletting and solicitation, but between political expression which is disruptive and that which is not. We cannot accept the government's apparent premise that all outdoor solicitation, no matter when or how conducted, is disruptive speech. The Postal Service may certainly regulate the time, place, and manner of solicitation on postal sidewalks to minimize interference with access to the post office and to avoid undue disruption of post office business. Such time, place, or manner regulations may include, for example, restrictions on the size of tables, the number of individuals who may solicit at one time, the placement of tables, and the use of parking spaces by non-postal customers. Such restrictions may take into consideration the needs and features of the particular facility. Speakers might be required to stand a certain distance from the doors or from the sidewalk curb or even to curtail their activities in hours of peak traffic. The absolute ban on solicitation, however, sweeps too broadly.

The Postal Service argues that the prohibition against soliciting alms or contributions on postal premises is "necessary to prevent disruptions and hindrances to the conduct of postal business." The absolute prohibition is considered "preferable to any attempt to permit solicitation under regulation as to time, place, and manner," which would be difficult to enforce and administer in the "tens of thousands of post offices throughout the nation." 43 Fed.Reg. 38824 (1978) (codified at 39 C.F.R. § 232). While concerns of uniformity and adminis-

trative efficiency may be sufficient to ban general use of nonpublic forums such as letterboxes, such interests do not warrant the elimination of an entire category of speech from a public sidewalk. *Greenburgh Civic Ass'ns,* 453 U.S. at 132–33, 101 S.Ct. at 2686–87. It is, of course, true that solicitation will engender some customer complaints and consume, at least initially, some time of postmasters and postal inspectors. Yet such is the necessary consequence of much time, place, and manner regulation. Outright prohibition of a medium of expression will always prove the easier and more efficient course. Yet liberty itself is no efficient concept, and the rights of citizens and interests of government are best reconciled not by total bans but through finespun accommodations. That, at least, has been the historic premise of First Amendment balancing, of the requirement that government use the least drastic means of curtailing free expression, and of "time, place, and manner" as a mediating device.

### V.

The record in this case reveals no evidence of a significant government interest best served by the ban on solicitation in a public forum. There is no evidence that Kokinda and Pearl's solicitation obstructed or impeded postal customers. Appellants were not charged with obstructing post office entrances, disturbing postal employees in the performance of their duties, or impeding the public in the transaction of postal business. *See* 39 C.F.R. § 232.1(e) (1986). There is nothing to suggest that they harassed, threatened, or physically detained unwilling listeners. Moreover, an unwelcome message in a public place does not infringe the interest of privacy associated with the home and is generally subject to avoidance by those who do not wish to hear it. *See Frisby,* 108 S.Ct. at 2501–02; *Cohen v. California,* 403 U.S. 15, 21–22, 91 S.Ct. 1780, 1786–87, 29 L.Ed.2d 284 (1971). The government's interest in preventing the obstruction or disruption of post office business or the harassment of postal patrons can be readily addressed by

the less restrictive alternative of prohibiting directly such obstruction, disruption or harassment. Section 232.1(e) demonstrates the feasibility of drafting more narrowly tailored regulations. *See Boos,* 108 S.Ct. at 1166.[1]

The evidence suggests, at most, minor inconvenience to postal patrons. Appellants' table partially blocked the post office sidewalk. The postal inspector testified that he thought that a person would have to move to get past someone at the table without touching them. Janet Wyatt, a post office customer, testified that, to get past an individual standing at the table and an automobile bumper protruding onto the sidewalk, she had to step off the sidewalk. These inconveniences are not unique to solicitation; they would also attend the mere distribution of literature from a table on the sidewalk. They could be better avoided by regulating the size and placement of the tables than by the imposition of a ban.

Wyatt also testified that parking at the Bowie post office "is pretty much at a premium" and she "had to wait for someone else to pull out in order to get a spot." Postmaster Poe testified that, on a prior occasion, he had asked two members of the same group, possibly appellants, to move their car from the parking lot. Again, the scarcity of parking is not a problem that a ban on solicitation is narrowly tailored to avoid. Regulations limiting parking to postal patrons for specified periods of peak traffic would appear to address the problem more directly.

There remain finally the complaints of annoyed postal patrons. Inspector Cochran testified that he was called to the Bowie post office because Kokinda and Pearl were "soliciting funds and annoying customers." The record reveals that postal employees received "forty to fifty" complaints concerning Pearl and Kokinda. Wyatt testified that, because she knew the Girl Scouts were not allowed to sell cookies

on federal property, she asked a clerk if Kokinda and Pearl's activities were not also illegal. The record is completely silent as to the nature or focus of the other thirty-nine to forty-nine complaints. For all we know, the complaints may have been generated by the hearers' disagreement with the message of the National Democratic Policy Committee or their disapproval of the appearance or affiliation of the speakers.

The First Amendment protects the speaker and not the sensibilities of those who would object to the speech. Justice Black, writing in dissent in *Feiner v. New York* 340 U.S. 315, 71 S.Ct. 303, 95 L.Ed. 295 (1951), recognized the importance of protecting unpopular, cantankerous speech:

> [I]f, in the name of preserving order, [the police] ever can interfere with a lawful public speaker, they first must make all reasonable efforts to protect him.... [T]he crowd was restless but there is no showing of any attempt to quiet it; pedestrians were forced to walk into the street, but there was no effort to clear a path on the sidewalk; one person threatened to assault [the speaker] but the officers did nothing to discourage this when even a word might have sufficed. Their duty was to protect [the speaker's] right to talk, even to the extent of arresting the man who threatened to interfere. Instead, they shirked that duty and acted only to suppress the right to speak.

*Id.* at 326–27, 71 S.Ct. at 310 (Black, J., dissenting).

The anti-solicitation regulation here, likewise, acts only to suppress speech. It prohibits all solicitation anywhere on postal service property. It sweeps an entire category of expressive activity off a public forum solely in the interest of administrative convenience. It does not attempt to limit nondisruptive solicitation to a time, place, and manner consistent with post of-

---

1. 39 C.F.R. § 232.1(e) provides:
   Disorderly conduct, or conduct which creates loud and unusual noise, or which obstructs the usual use of entrances, foyers, corridors, offices, elevators, stairways, and parking lots, or which otherwise tends to impede or disturb the public employees in the performance of their duties, or which otherwise impedes or disturbs the general public in transacting business or obtaining the services provided on property, is prohibited.

fice operations; and it does not require that evidence of disruption be shown.

No thought was given to accommodating these speakers, only to removing them. For the foregoing reasons, their judgments of conviction are

REVERSED.

WIDENER, Circuit Judge, dissenting:

The majority holds an internal postal walkway, some seventy-seven feet from a public sidewalk, to be a traditional public forum and in so doing strikes down 39 C.F.R. § 232.1(h) as unconstitutional. Our decision is contrary to every circuit which has decided the question, the Third, Ninth, and Eleventh Circuits. And the Seventh Circuit has reached the same result.[1] Because I believe that the walkway at issue is a nonpublic forum and that the challenged regulation is reasonable and viewpoint-neutral, I respectfully dissent.

The internal postal walkway at issue is at all points some seventy-seven feet from a public sidewalk and street. It is separated from the public way by a parking lot owned by the post office. The walkway is wholly on post office property and is used solely for pedestrian traffic between the post office parking lot and the post office. As in the Third Circuit, "[i]t is clear that the walkways at issue here bordering freestanding buildings a good distance removed from the street could not be confused with municipal sidewalks." *United States v. Bjerke,* 796 F.2d 643, 649 (3rd Cir.1986).

The postal regulation struck down by the majority forbids solicitation on postal property.[2] It is true that certain non-commercial solicitation is protected speech as illustrated by *Cornelius v. NAACP Legal De-* *fense & Ed. Fund,* 473 U.S. 788, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985), which held solicitation for the CFC, a federal employee charity drive, to be protected speech. That however merely begins the inquiry since "[e]ven protected speech is not equally permissible in all places at all times. Nothing in the Constitution requires the government freely to grant access to all who wish to exercise their right to free speech on every type of government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." 473 U.S. at 799–800, 105 S.Ct. at 3447. The First Amendment does not guarantee access to government property simply because the property is owned or controlled by the government. *Cornelius* at 803, 105 S.Ct. at 3449. The government has the power to preserve the property under its control for the use to which it is lawfully dedicated. For the purposes of determining when the government's interest in limiting the use of its property for its intended purpose outweighs other interests in its use, the Supreme Court has adopted a "forum analysis." The extent to which the government may control access depends upon the nature of the forum. *Cornelius* at 800, 105 S.Ct. at 3447; see also *Perry Education Assn. v. Perry Local Educators' Assn.,* 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983).

In this circuit, we have previously applied the forum analysis required by *Perry* and cases following. In *Chapman v. Thomas,* 743 F.2d 1056 (4th Cir.1984), cert. denied, 471 U.S. 1004, 105 S.Ct. 1866, 85 L.Ed.2d 160 (1985), we upheld North Carolina State University's ban of most, but not all, on-campus door to door solicitation.

---

1. Confronted with the exact issue, three other circuits have held that similar internal postal walkways are not traditional public forums and that the challenged postal regulations were reasonable and viewpoint neutral. *United States v. Bjerke,* 796 F.2d 643 (3rd Cir.1986), *Monterey Cty. Dem. Cent. Comm. v. U.S. Postal Service,* 812 F.2d 1194 (9th Cir.1987), *United States v. Belsky,* 799 F.2d 1485 (11th Cir.1986).

   The Seventh Circuit held the postal regulation struck down by the majority here was a reasonable manner restriction and therefore constitutional even if the walkway was a public forum,

an issue the court declined to reach. *National Anti–Drug Coalition Inc. v. Bolger,* 737 F.2d 717 (7th Cir.1984).

2. The regulation, 39 C.F.R. § 232.1(h), provides in relevant part:

   (1) Soliciting alms and contributions, campaigning for election to any public office, collecting private debts, commercial soliciting and vending, and displaying or distributing commercial advertising on postal premises are prohibited.

In so holding, we construed *Perry* and the application of the *Perry* standards against which to measure restraints placed upon First Amendment activity:

> The first category includes traditional public forums such as streets and parks "which by long tradition or government fiat have been devoted to assembly and debate" (citation omitted). The [government's] power to restrict first amendment activities in public forums is severely limited ...
>
> Public property not in the first category that is, however, open to the public by the ... [government] as a forum for expressive activity comprises the second category. Although the [government] ... is not constitutionally required to open such facilities to the public, if it chooses to do so, the state then is bound by the same standards as apply in a traditional public forum. [Citations omitted] ...
>
> The third category consists of public property which is neither a traditional nor designated public forum. These nonpublic forums are governed by different standards [citation omitted] ... In *Perry*, the Court held that
>
>> Implicit in the concept of nonpublic forum is the right to make distinctions in access on the basis of subject matter and speaker identity. These distinctions may be impermissible in a public forum but are inherent and inescapable in the process of limiting a nonpublic

forum to activities compatible with the intended purpose of the property ... When government property is not dedicated to open communication the government may-without further justification-retrict use to those who participate in the forum's official business. (Citations omitted).

*Chapman,* supra, at 1058.

I cannot accept the premise advanced by the majority as the principal reliance for its decision that all sidewalks, wherever located, are fungible and are public forums. While it is true that in *United States v. Grace,* 461 U.S. 171, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983), the Court held that a sidewalk forming a part of the perimeter of certain of the Supreme Court grounds was a public forum, the Court repeatedly stressed the fact that the perimeter sidewalks at issue were "indistinguishable from any other sidewalks in Washington, D.C." 461 U.S. at 179, 103 S.Ct. at 1708.[3] Identifying a portion of government property as a sidewalk does not end the inquiry. Rather, the relevant authorities require us to determine whether these sidewalks are public, by tradition or by designation, or nonpublic. The walkway at issue in this case does not define the government property or form the perimeters thereof, as did the sidewalks in *Grace.* The walkway in this case is distinguishable from the municipal sidewalk which forms the street front boundary of this postal property; indeed, it lies some 77 feet from the public sidewalk

---

**3.** The Supreme Court expressly declined to rule on the First Amendment implications of restricting expressive activity within the Court grounds, choosing instead to limit its holding to perimeter sidewalks. The Court emphasized that these sidewalks were "public" because they were indistinguishable from traditional "public" sidewalks: "[t]he sidewalks comprising the outer boundaries of the Court grounds are indistinguishable from any other sidewalks in Washington, D.C., and we can discern no reason why they should be treated differently." *Grace,* supra, at 179, 103 S.Ct. at 1708; "[t]here is no separation, no fence, and no indication whatever to persons stepping from the street to the curb and sidewalks that serve as the perimeter of the Court grounds that they have entered some special type of enclave." 461 U.S. at 180, 103 S.Ct. at 1708; "[t]hose sidewalks are used by the public like other public sidewalks. There is

nothing to indicate to the public that these sidewalks are part of the Supreme Court grounds or are in any way different from other public sidewalks in the city." 461 U.S. at 183, 103 S.Ct. at 1710.

In *Grace,* the Court did *not* establish that all sidewalks, except those in an enclosed and secured enclave, constitute traditional public forum property. The Court has rejected an attempt to dismiss the holdings of *Greer v. Spock,* 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976) (sidewalks within a military base are not public forums); *Adderley v. Florida,* 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966) and *Jones v. North Carolina Prisoners' Union,* 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977) (jail and prison property are not public forums), as an exception to the analysis for "unusual forums" or enclosed and secure enclaves. *Perry,* 460 U.S. at 49, n. 9, 103 S.Ct. at 957, n. 9.

which runs along the street on which the post office is located. Had the government attempted to restrict First Amendment activity on that public sidewalk, we would have a different case, but that question is not before us. The district court found that the internal walkway in question serves only one function, i.e., for access to the post office in furtherance of postal business. Its dedication to that use is not challenged. The walkway in question here is entirely within postal property, serves the sole function of furthering official postal business, and is separated by a parking lot from the municipal sidewalk which does abut the government property. The internal postal walkway is not a traditional public forum within the meaning of that phrase as used in *Perry*. So, the walkway is not within *Perry's* first classification.

Similarly the government has not dedicated this walkway for First Amendment activity. The government did not create its walkway for purposes of providing a forum for expressive activity. Even had such activity occurred there, which is not this case, and even though it may be available for the limited communication of ideas, this walkway is not so automatically made into a public forum. See, e.g., *Cornelius*, 473 U.S. at 805, 105 S.Ct. at 3450; *U.S. Postal Service v. Greenburgh Civic Assns.*, 453 U.S. at 130 n. 6, 101 S.Ct. at 2685 n. 6. The uncontroverted evidence establishes that the walkway was not made available for solicitation, and never has been so far as the record discloses. While defendants argue that the postal regulation does not prohibit the free distribution of literature, as we have noted, the "government does not create a public forum ... by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse." *Cornelius*, supra, 473 U.S. at 802, 105 S.Ct. at 3449. Some "... selective access does not transform government property into a public forum." *Perry*, 460 U.S. at 47, 103 S.Ct. at 956. Thus, the property does not fall within *Perry's* second classification.

This analysis leaves the inner walkway in question as a nonpublic forum and thus within *Perry's* third classification. The analysis next requires a determination of whether the restriction is reasonable and viewpoint-neutral. *Cornelius*, 473 U.S. at 806, 808, 105 S.Ct. at 3451, 3452. The ban on *all* solicitation is viewpoint neutral. The regulation is reasonable in light of the purpose the property is intended to serve. Permitting solicitation activities may reasonably be expected to interfere with access to the post office. While such solicitation as that at issue here is a form of protected speech, it is a more intrusive and complicated activity than would be the mere distribution of free literature. It causes greater disruption and confusion and is more time consuming. See *United States v. Belsky*, 799 F.2d 1485, 1489–90 (11th Cir.1986).

As noted by the *Belsky* court:

> [s]uch activities could contribute to parking congestion, make access into the postal buildings difficult, and generally impede the use of the properties for their intended purpose, which is to provide postal services. If solicitation were permitted on postal grounds, it is unlikely that appellants' group would be the only organization to take advantage of it; the result could be considerable disruption of postal activities. 799 F.2d at 1489.

The regulation is reasonable, viewpoint-neutral, and designed to further the efficient rendering of postal services. It restricts access to a *nonpublic* forum, and so does not offend the First Amendment. *Cornelius*, 473 U.S. at 811, 105 S.Ct. at 3453, states well my conclusion: "[t]he First Amendment does not forbid a viewpoint-neutral exclusion of speakers who would disrupt a nonpublic forum and hinder its effectiveness for its intended purpose."

Finally, the fact that the regulation applies to all post offices, without regulatory language providing for the nuances of each individual post office building or facility, does not render the regulation overbroad in the sense that it does not account for variations in individual post offices. In the words of the Supreme Court:

If Congress and the Postal Service are to operate as efficiently as possible a system for the delivery of mail which serves a Nation extending from the Atlantic Ocean to the Pacific Ocean, from the Canadian boundary on the north to the Mexican boundary on the south, it must obviously adopt regulations of general character having uniform applicability throughout the more than three million square miles which the United States embraces. In so doing, the Postal Service's authority to impose regulations cannot be made to depend on all of the variations of climate, population, density, and other factors that may vary significantly within a distance of less than 100 miles.

*U.S. Postal Service v. Greenburgh Civic Assns.*, 453 U.S. at 133, 101 S.Ct. at 2687.

Neither is the regulation overbroad because it prevents *all* solicitation. Indeed, that very fact insures viewpoint neutrality.

In sum, I would affirm.