**INTERNATIONAL CAUCUS OF LABOR COMMITTEE and David McVey, Plaintiffs,**

v.

**MARYLAND DEPARTMENT OF TRANSPORTATION, MOTOR VEHICLE ADMINISTRATION; Richard H. Trainor, in his official capacity as Secretary of the Maryland Department of Transportation; and Joseph A. Vicchio, in his official capacity as Director of the Division of Departmental Services, Motor Vehicle Administration, Defendants.**

**Civ. No. H–89–2278.**

United States District Court, D. Maryland.

Aug. 28, 1990.

R. David Pembroke, Hagerstown, Md., for plaintiffs.

Edward R.K. Hargadon, Asst. Atty. Gen., Glen Burnie, Md., for defendants.

## MEMORANDUM OPINION

ALEXANDER HARVEY, II, Chief Judge.

Presently pending in this civil action are cross-motions for summary judgment filed by both plaintiffs and defendants. Plaintiffs are the International Caucus of Labor Committee (hereinafter "I.C.L.C.") and one of its members, David McVey. Plaintiffs have here sued the Motor Vehicle Administration (hereinafter the "MVA") of the Maryland Department of Transportation, as well as two state officials, claiming under 42 U.S.C. § 1983 that the actions of the defendants violated plaintiffs' constitutional rights under the First and Fourteenth Amendments to the United States Constitution.

Plaintiffs have moved for summary judgment claiming that restrictions imposed by defendants on speech activities undertaken by plaintiffs on MVA property unconstitutionally restrict their rights under the First and Fourteenth Amendments. Defendants in turn have moved for summary judgment, claiming that the restrictions which they have imposed are reasonable under the standard to be applied on government property of the sort involved here.

Memoranda in support of and in opposition to the pending motions for summary judgment have been filed by the parties. The record in this case also includes depositions, exhibits and an affidavit. Oral argument has been heard in open Court. For the reasons to be stated herein, defendants' motion for summary judgment will be granted, and plaintiffs' motion for summary judgment will be denied.

### I  Facts

Plaintiff I.C.L.C. is an organization which seeks to disseminate its political and social views by operating public information tables and distributing literature at various public facilities in the State of Maryland. The MVA is an agency of the State with its headquarters in Glen Burnie, Maryland and branch offices in other locations. Defendants Richard H. Trainor and Joseph A. Vicchio are officials of the Maryland Department of Transportation and the MVA, respectively, who are being sued in their official capacities.

To gain access to MVA facilities for the purpose of distributing literature, an individual or organization must complete and file with the MVA a form entitled "Request to Distribute Literature." The form requires specification of the date, time, facility to be used, and personnel involved, as well as a description of the activity to be undertaken.

The form also contains a number of restrictions to which an applicant must agree before access to MVA facilities is permitted. These restrictions include: (1) that the activities shall be confined to sidewalk areas and shall not hinder the ingress or egress of MVA customers; (2) that the number of participants be limited to a reasonable number; (3) that the activities shall be conducted peacefully, without harassment, disorderly conduct, loud noises, profanity, or unreasonable disturbances; (4) that the participants post a sign stating

that the MVA has no connection with the organization; (5) that the participants shall be responsible for cleaning the area; (6) that literature shall not be left unattended on MVA property; and (7) that individuals or organizations shall register in advance with defendant Vicchio. Noncompliance with these restrictions is stated by the form to be grounds for denial of or revocation of access to the facility.

Since 1981, the I.C.L.C. has been completing and filing this form and has been granted access to MVA facilities for the purpose of distributing literature. However, during the period 1981–1988, plaintiff I.C.L.C. was denied access to certain MVA facilities on five different occasions because of the failure of one or more of its members to comply with restrictions contained in the Request Form.

Plaintiffs have previously received suspensions of one to six days and, in one instance prior to 1988, received a one-year suspension. On or about August 18, 1988, plaintiffs were once again suspended for the period of one year from engaging in speech activities, limited to the Baltimore City location of the MVA. This suspension was based on physical confrontations which had occurred on two separate occasions in August of 1988 between representatives of I.C.L.C. and members of the public. This most recent one-year suspension ended on August 18, 1989. This civil action was filed in this Court on August 9, 1989.

## II  *Plaintiffs' Claims*

Plaintiffs have here sued under 42 U.S.C. § 1983, asserting that defendants have violated and continue to violate their constitutional rights by placing unreasonable restrictions on the exercise by plaintiffs of their First Amendment activities. Plaintiffs also contend that defendants' actions have violated and continue to violate plaintiffs' right to procedural due process under the Fourteenth Amendment because their access to MVA property may be revoked allegedly without notice and an opportunity to be heard.

As relief, the complaint seeks (1) a declaratory judgment that defendants had acted in bad faith and had intentionally violated plaintiffs' First Amendment rights by the suspension of August, 1988; (2) a preliminary and permanent injunction restraining defendants from interfering with plaintiffs' exercise of their First Amendment rights; (3) an Order granting plaintiffs reasonable access to public areas located on MVA facilities; (4) an Order requiring defendants to establish adequate procedures to protect plaintiffs' constitutional rights while on MVA property; and (5) an award of attorneys' fees and costs.

Defendants initially responded to the complaint by filing a motion to dismiss or for summary judgment. In a Memorandum and Order dated November 27, 1989, that motion was granted in part and denied in part. This Court held that plaintiffs' request for a declaratory judgment was moot, since the one-year suspension imposed in 1988 had been lifted and since plaintiffs were then free to engage in First Amendment activities in the same manner as any other organization. However, the Court denied defendants' motion to dismiss plaintiffs' request for injunctive relief, noting that such request was prospective in nature and that the pertinent facts had not been developed by way of discovery.

A Scheduling Order was then entered and the parties engaged in discovery. Cross motions for summary judgment were then filed.[1] For the reasons to be stated, defendants' motion for summary judgment will be granted, and plaintiffs' motion for summary judgment will be denied.

### III  *Discussion*
#### (a)  *Free Speech Claim*

Both motions have been filed under Rule 56, F.R.Civ.P. The essential facts are not disputed, and solely questions of law are presented to the Court for its determination. Both sides accordingly have agreed that the issues in this case may appropriately be decided by the Court pursuant to

---

1. Defendants initially filed a motion for partial summary judgment. Subsequently, a motion for summary judgment directed to all of plaintiffs' claims was filed by defendants. The latter motion has superseded the former.

the pending motions for summary judgment.

■ The existence of a right of access to public property for activities involving speech and the standard for governmental limitations upon such a right depend upon an evaluation of the character of the property involved. *Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37, 44, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983). If the public property is characterized as traditional public fora, like streets and parks which have traditionally been places of expressive activity, then any government regulation of speech is subject to a standard of strict scrutiny. Strict scrutiny is also applied to public property which the government has expressly designated for speech activities. *Perry*, 460 U.S. at 45–46, 103 S.Ct. at 954–55. When a standard of strict scrutiny is to be applied, a governmental regulation may be upheld only if it serves a significant state interest and is narrowly tailored to serve that interest. *Id.*

■ If the public property in question is not by tradition or designation a forum for communication, then the property is considered to be nonpublic and the State may enact regulations designed to reserve the forum for its intended purpose. *Perry, supra* at 46, 103 S.Ct. at 955. Regulation of speech activity occurring in nonpublic fora is to be examined under a standard of reasonableness. Before a court may apply a particular standard to governmental regulations of this sort, it must examine the character of the particular property to determine the nature of the forum. *Id.*

■ In this case, plaintiffs used sidewalks on MVA property to distribute literature and solicit contributions. Plaintiffs claim that these sidewalks constitute public fora and that a standard of strict scrutiny must be applied to the MVA regulations. Defendants contend to the contrary that, under the principles enunciated by the Supreme Court in its very recent opinion in *United States v. Kokinda*, —— U.S. ——, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990), MVA property must be characterized as nonpublic fora, and that any regulations of

or restrictions on speech activity on such property are to be reviewed under a standard of reasonableness.

In *Kokinda*, volunteers for the National Democratic Policy Committee had set up a table on the sidewalk near the entrance of a post office located in Bowie, Maryland. The volunteers sought contributions and distributed literature addressing various political issues. After United States Postal Service personnel received a number of complaints, the volunteers were asked to leave. When they refused to do so, they were arrested. Following their conviction by a Magistrate of this Court, they appealed. Judge Motz of this Court affirmed the convictions, holding that the postal sidewalk was not a public forum and that the Postal Service's ban on solicitation was reasonable. A divided panel of the Fourth Circuit reversed. *United States v. Kokinda*, 866 F.2d 699 (1989). The Supreme Court in turn reversed the judgment of the Fourth Circuit. *United States v. Kokinda, supra.*

The primary issue before the Supreme Court in *Kokinda* was whether the post office sidewalk constituted a traditional public forum or a nonpublic forum. —— U.S. at ——, 110 S.Ct. at 3120. In its plurality opinion, the Court pointed out that the location and purpose of a publicly-owned sidewalk is critical in determining whether such a sidewalk constitutes a public forum. *Kokinda*, —— U.S. at ——, 110 S.Ct. at 3121, citing *Cornelius v. NAACP Legal Defense and Educational Fund*, 473 U.S. 788, 800, 105 S.Ct. 3439, 3448, 87 L.Ed.2d 567 (1985). Certain public streets and sidewalks have from "time out of mind" been used for the purpose of assembly, for communicating thoughts between citizens, and for discussing public questions. *Boos v. Barry*, 485 U.S. 312, 318, 108 S.Ct. 1157, 1162, 99 L.Ed.2d 333 (1988), citing *Hague v. CIO*, 307 U.S. 496, 515, 59 S.Ct. 954, 964, 83 L.Ed. 1423 (1939). Others have not. In *Kokinda*, the Court held that the sidewalk at the Bowie post office was not the "quintessential public sidewalk" because it was constructed solely to permit access from the parking lot to the

post office and was an access route reserved for a particular purpose. —— U.S. at ——, 110 S.Ct. at 3120. The Court said the following:

> The postal sidewalk was constructed solely to assist postal patrons to negotiate the space between the parking lot and the front door of the post office, not to facilitate the daily commerce and life of the neighborhood or city.

*Id.*

The Court further noted that the Postal Service had not expressly dedicated its sidewalks to any expressive activity and observed that selective access does not transform government property into a public forum. *Kokinda,* —— U.S. at ——, 110 S.Ct. at 3121. A particular forum cannot become a designated public forum simply by permitting limited discourse; rather, the government must intentionally open a nontraditional forum for public discourse. *Id.,* citing *Cornelius,* 473 U.S. at 802, 105 S.Ct. at 3449. The Supreme Court accordingly found the sidewalk adjacent to the Bowie post office to be a nonpublic forum, concluded that the Postal Service regulations were reasonable and reversed the judgment of the Fourth Circuit.

In the case presently before this Court, defendants argue persuasively that sidewalks of the MVA building, like those of the Bowie post office, are not traditional public fora, and defendants contend that their regulations should be reviewed under a standard of reasonableness. Defendants point out that the MVA sidewalks, like the Bowie post office sidewalks, are interior walkways constructed for the particular purpose of carrying out MVA business. No state or MVA official has expressly designated the MVA sidewalks as open for general speech activity, and selective access to the area does not alter its nonpublic character. Defendants assert that the restrictions here are consistently implemented so as to permit speech activities only to the extent that they do not interfere with the primary purpose of the facility.

This Court would agree with defendants' position. This case is controlled by *Kokinda.* When the principles of that very recent decision of the Supreme Court are applied to the facts of this case, this Court concludes that the restrictions imposed by defendants here must be examined under a standard of reasonableness. When so examined, such restrictions do not unconstitutionally infringe plaintiffs' First Amendment rights.

Plaintiffs' attempts to distinguish *Kokinda* are unavailing. First, plaintiffs contend that the plaintiffs in *Kokinda* were merely seeking solicitations, whereas plaintiffs in this case were also attempting to distribute information. Plaintiffs note that, unlike this case, the plaintiffs in *Kokinda* did not obtain prior approval, but had simply appeared on post office property before being arrested. Plaintiffs also argue that in *Kokinda* the plaintiffs were removed from the post office property pursuant to a postal regulation, while no such controlling regulation exists in this case and removal is dictated by the restrictions of the Request Form.

These insignificant differences do not in the opinion of this Court alter the essential nature of the MVA property as a nontraditional public forum. Solicitation is a recognized form of speech protected by the First Amendment, *Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 629, 100 S.Ct. 826, 832, 63 L.Ed.2d 73 (1980), and a court's analysis of the nature of the forum would not differ whether the activity in question was distribution of literature or solicitation. Furthermore, the Court perceives no difference between a regulation of the Postal Service and restrictions set forth in the Request Form. In either case, the party seeking to engage in speech activities is made aware of the prohibited behavior on the property. Finally, the fact that plaintiffs must obtain prior approval before gaining access to the property hardly distinguishes this case from *Kokinda.* Rather, this fact bolsters defendants' argument that the MVA property has not been expressly designated a public forum and is subject only to selective access.

Indeed, the intrusion on First Amendment rights in this case is much less than that in *Kokinda.* There the federal regula-

tion prohibited *all* solicitation while in this case plaintiffs' activities have been merely subjected to restrictions which can hardly be viewed as onerous. Concluding that the sidewalk located on the Bowie Post Office property was not a public forum, the Fourth Circuit in its opinion declared the regulation to be unconstitutional. 866 F.2d 699. The Supreme Court disagreed and upheld the ban on First Amendment activities in spite of the breadth of the prohibition. —— U.S. ——, 110 S.Ct. 3115.

For all these reasons, the Court finds and concludes that the MVA property in question constitutes a nonpublic forum and that restrictions on plaintiffs' First Amendment activities must be analyzed pursuant to a standard of reasonableness. Under this standard, a government may control access as long as the distinctions drawn are reasonable in light of the purpose of the forum and are viewpoint neutral. *Kokinda,* —— U.S. at ——, 110 S.Ct. at 3121–22, citing *Cornelius v. NAACP Legal Defense and Educational Fund,* 473 U.S. 788, 806, 105 S.Ct. 3439, 3451, 87 L.Ed.2d 567 (1985). The government's actions need not be the most reasonable or the only reasonable limitation. *Id.*

■ Under the standard of reasonableness as applied here, this Court concludes that the restrictions imposed by the MVA on plaintiffs' activities pass constitutional muster. There is no dispute that the restrictions are viewpoint neutral. Restrictions regarding placement of tables so as not to hinder ingress and egress of patrons have been specifically upheld by the Supreme Court, so long as the restrictions are even-handed. *Heffron v. International Society for Krishna Consciousness,* 452 U.S. 640, 650, 101 S.Ct. 2559, 2565, 69 L.Ed.2d 298 (1981). A limit on the number of participating individuals has also been upheld in light of the purpose of the forum. *Kokinda,* 866 F.2d at 704. Moreover, regulations regarding disorderly conduct, loud noises, profanity, harassment and the like are also valid. *Id.* at 704–05.

For all these reasons, this Court concludes that defendants have not violated plaintiffs' First Amendment rights by pro-

mulgating and enforcing the reasonable restrictions which have been challenged in this case.

### (b) Due Process Claim

Plaintiffs have also challenged in this case the Request Form's provision that refusal to comply with its requirements will result in a revocation of permission to engage in communicative activity. Plaintiffs argue that this restriction violates plaintiffs' right to procedural due process by curtailing their First Amendment activities without notice or an opportunity to be heard. Plaintiffs seek injunctive relief which would order defendants to establish proper procedures for determining revocation of access to MVA property.

■ The rights of free speech and press are embodied in the concept of "liberty" and may not be deprived without due process of law. *See Joseph Burstyn, Inc. v. Wilson,* 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952). However, the concept of due process is a flexible one which will vary depending upon the importance attached to the interest and the particular circumstances under which the deprivation may occur. *Walters v. National Association of Radiation Survivors,* 473 U.S. 305, 320, 105 S.Ct. 3180, 3189, 87 L.Ed.2d 220 (1985).

In *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court devised a balancing test to be applied to claims that an individual has not received adequate due process. The Court considered the following factors:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews,* 424 U.S. at 335, 96 S.Ct. at 903.

■ In ensuring "fundamental fairness," the concept of due process does not

require that the procedures used be so comprehensive as to preclude any possibility of error. *Walters,* 473 U.S. at 320, 105 S.Ct. at 3189, citing *Mackey v. Montrym,* 443 U.S. 1, 13, 99 S.Ct. 2612, 2618, 61 L.Ed.2d 321 (1979). The Supreme Court has also stated that marginal gains to be derived from additional procedural safeguards may often be outweighed by the cost of providing such a safeguard. *Walters,* 473 U.S. at 321, 105 S.Ct. at 3189.

█ While plaintiffs have a recognized interest in the exercise of their First Amendment rights, this interest differs somewhat from a property or a liberty interest because plaintiffs are free to engage in their speech activities in other areas, and even at other MVA facilities in Maryland where a particular suspension did not apply.[2] The type of deprivation involved here is therefore not as serious as an arrest leading to a criminal conviction or an outright taking of property. There is no absolute prohibition here of plaintiffs' First Amendment activities. They are free to express their views in other fora and even at other MVA facilities if they abide by the restrictions which this Court has found to be reasonable. Moreover, the risk of erroneous deprivation is not so great because these restrictions are specifically set forth in the form, and the form's language gives an applicant clear prior notice of the type of behavior which may result in a suspension. These restrictions do not "vest in an administrative official discretion to grant or withhold a permit upon broad criteria unrelated to proper regulation of public places" so as to violate due process requirements. *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 153, 89 S.Ct. 935, 940, 22 L.Ed.2d 162 (1969).

Furthermore, the State of Maryland has a significant interest in maintaining safety and order on MVA premises. Although the MVA has no written policy in this regard, it is not disputed that defendants have followed a practice of having discussions with I.C.L.C. representatives before a suspen-

sion or other penalty is imposed. Although these discussions are informal, plaintiffs have had and will continue to have under such policy an opportunity to contest a suspension or other denial of their access to MVA property.

The record here discloses that the procedures whereby plaintiffs have in the past been suspended are not arbitrary in that they are based on proper notice of the restrictions set forth in the Request Form and on the opportunity afforded plaintiffs to be heard before disciplinary action is taken. The fiscal and administrative burdens of a more formal procedure would outweigh the need under the circumstances here. Constitutional requirements have been met in this case, and this Court accordingly concludes that plaintiffs' due process rights have not been infringed.

## IV  *Conclusion*

For all these reasons, defendants' motion for summary judgment will be granted, and plaintiffs' motion for summary judgment will be denied. A separate Order will be entered by the Court.

---

2. In August of 1988, plaintiffs were suspended from carrying on their activities only at the MVA property in Baltimore City.