Frank LONGO

v.

**UNITED STATES POSTAL SERVICE and Alden Victoria, in his Official Capacity as Postmaster: of the Torrington Post Office.**

Civ. No. H–88–557 (AHN).

United States District Court,
D. Connecticut.

April 8, 1991.

Matthew Horowitz, Wieselman, Horowitz & Thayer, Martin Margules, CCLUF, Hartford, Conn., for plaintiff.

Joseph V. Jest, U.S. Dept. of Justice, Civil Div., Federal Programs Branch, Washington, D.C., for defendant.

## RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

NEVAS, District Judge.

In this case, the plaintiff, Frank Longo ("Longo"), sues the defendant, the United States Postal Service ("USPS"), for violating his constitutional rights under the First and Fifth Amendments to the United States Constitution by preventing him from soliciting signatures on a petition enabling him to run for political office. The plaintiff alleges that the section of 39 C.F.R. § 232.1(h)(1) (1985) prohibiting campaigning for election to public office on Postal Service Property violates the First Amendment both on its face and as applied. Pending are cross motions for summary judgment, pursuant to Rule 56, Fed.R. Civ.P. For the reasons stated below, the plaintiff's motion for summary judgment is granted and the defendant's motion for summary judgment is denied.

### I.

### A.

The undisputed facts [1] sketch the following narrative. In 1988, the plaintiff, Frank Longo, a long-time participant in state and local politics, attempted to run for the United States Senate from Connecticut as an independent candidate. In order to qualify for a place on the ballot, he was required to collect approximately 9800 signatures on petitions. On May 25, 1988, Mr. Longo attempted to solicit signatures in support of his candidacy at the Torrington Connecticut Post Office. At that time he set up a table and chair on the interior postal walkway adjacent to the entrance of the Post Office Building. Postmaster Alden Victoria informed Mr. Longo that such actions violated the USPS regulation set forth in 39 C.F.R. § 232.1(h)(1),[2] and directed him to leave the premises. When he refused, Mr. Longo was shown a copy of the regulation. For his continued refusal to leave, he was arrested by the Torrington Police for Criminal Trespass. On July 13, 1988, the charges against Mr. Longo were dropped in exchange for his promise to comply with the regulation. Nevertheless, Mr. Longo returned on four separate occasions between July 25 and August 12, 1988 to solicit additional signatures for his petition, each time setting up a table and chair on the same interior walkway.[3] During these latter occasions, several postal patrons complained that Mr. Longo was abusive when they refused to sign his petition or when they questioned him as to his reasons for using Postal Service property.

The Torrington Connecticut Post Office is located on property owned by the Postal Service which is used exclusively for postal service operations. The postal service-owned lot is surrounded by public, municipal sidewalks and streets, and the post office building is separated from those sidewalks and streets by an interior postal walkway, a parking lot, driving lanes and garage space for postal service vehicles.

---

1. The parties stipulated to the material facts not in dispute. *See* Parties' Joint Statement of Material Facts Not in Dispute (filing 25).

2. The regulation at issue, contained in the Postal Service Manual Section 221.654, provides in pertinent part:

 (h) *Soliciting, electioneering, collecting debts, vending and advertising.* (1) Soliciting alms and contributions, *campaigning for election to any public office,* collecting private debts, commercial soliciting and vending, and displaying or distributing commercial advertising on postal premises are prohibited.

 39 C.F.R. § 232.1(h)(1) (emphasis added),

3. Because the May 25th incident was still under review by Postal Service Officials, it was decided that no further action would be taken pending completion of the review.

The interior postal service walkway is adjacent to and leads to the entrance to the post office building. This walkway provides the only means by which customers of the post office may travel from the parking lot to the post office building.

### B.

Although the complaint was filed on August 12, 1988, the suit was stayed by mutual agreement of the parties when the United States Supreme Court granted certiorari in *United States v. Kokinda*, 866 F.2d 699 (4th Cir.1989), *cert. granted*, — U.S. —, 110 S.Ct. 47, 107 L.Ed.2d 16 (1989). *See* Order on Parties' Joint Motion to Stay Further Proceedings Pending Supreme Court Decision, October 16, 1989 (filing 35). *Kokinda* involved the ban on solicitation of alms and contributions prohibited by the same post office regulation at issue in the instant case. The third, ninth, eleventh and D.C. circuits had held that postal walkways are nonpublic fora; the fourth circuit in *Kokinda* had reversed the district court's holding that the exterior postal sidewalk was a nonpublic forum.[4] The parties in the instant case expected that the Supreme Court's ruling in *Kokinda* would decide whether exterior postal sidewalks are public fora. In *Kokinda*, — U.S. —, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990), the Supreme Court in a 5–4 decision sustained the no-solicitation of funds rule. Four of the justices in Justice O'Connor's plurality held that exterior postal sidewalks are not public fora. Justice Kennedy concurred in the judgment only and noted that he found it unnecessary to decide the public forum issue because he believed that even in a public forum, the no-solicitation of funds rule would pass time, place, and manner review. *Kokinda*, 110 S.Ct. at 3125–26. The four dissenting justices (Brennan, Blackmun, Marshall and Stevens) concurred that exterior postal sidewalks are public fora.

After *Kokinda* was decided, the parties filed supplemental memoranda to their cross-motions for summary judgment. This court heard oral argument on December 3, 1990. The plaintiff now argues that Justice Kennedy, if considering the no-campaigning part of the rule rather than the no-solicitation of funds subsection, would have joined the dissenters in the view that exterior postal sidewalks are public fora.

The defendants, on the other hand, argue that the *Kokinda* plurality decided the issue at stake in the instant case, that exterior postal sidewalks are nonpublic fora, and that the ban on campaigning challenged here is content-neutral, since, as with the ban on the solicitation of funds at issue in *Kokinda*, "it is needed to avoid the inherent delays and disruptions caused by such activity, the uncomfortable even intimidating or confrontational atmosphere it can create, and the administrative burden that would be imposed on postal officials if a case-by-case regulatory approach were required." Supplemental Memorandum in Support of Defendants' Motion for Summary Judgment, at 3 (filing 24). Thus the defendants argue that *Kokinda* fully supports their position that the ban on political campaigning in 39 C.F.R. § 232.1(h)(1) is a reasonable and content-neutral regulation which passes constitutional muster under either the reasonableness standard applicable to nonpublic fora or under time, place and manner review.

### C.

To prevail on a Rule 56 motion, a movant must demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. On a motion for summary

---

**4.** Prior to the Supreme Court's reversal of the fourth circuit's holding in *United States v. Kokinda*, 866 F.2d 699 (4th Cir.1989) the Circuit Courts of Appeals were in conflict with respect to the proper forum designation to be applied to post offices situated similarly to the instant post office. All of the Circuit Courts of Appeals that had addressed this issue, with the exception of the fourth circuit, had found that postal premises are not traditional public fora. *See Monterey Democratic Cent. Comm. v. United States Postal Serv.*, 812 F.2d 1194 (9th Cir.1987); *United States v. Belsky*, 799 F.2d 1485 (11th Cir.1986); *United States v. Bjerke*, 796 F.2d 643 (3rd Cir. 1986); *Am. Postal Workers Union v. United States Postal Serv.*, 764 F.2d 858 (D.C.Cir.1985).

judgment, the court does not try issues of fact, and summary judgment is inappropriate where factual issues are in dispute. 6 J. Moore, W. Taggart, & J. Wicker, *Moore's Federal Practice*, para. 56.04 (2d ed. 1988). The burden of demonstrating the absence of a genuine issue rests with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). This burden does not shift when cross-motions are before the court: each motion must be judged on its own merits. *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 314 (2d Cir.1981). Pursuant to Rule 16, Fed.R.Civ.P., and Rule 9(c), R.Civ.P. (D.Conn.), the parties have stipulated to material facts in conjunction with their cross-motions for summary judgment. Thus, in the instant matter, the parties are not in dispute as to the material facts; instead, they differ in their interpretations of the law applicable to the case. Because resolution of questions of law is uniquely a judicial function, the court finds that the cross-motions have placed the disputed issues squarely before the court.

## II.

 It is established that campaigning for public office is an activity that may receive First Amendment protection. *See Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976);[5] *Meyer v. Grant*, 486 U.S. 414, 424, 108 S.Ct. 1886, 1892, 100 L.Ed.2d 425 (1988).[6] On the other hand, under appropriate circumstances, the government may, consistent with the Constitution, limit the exercise of First Amendment rights on public property.[7] "[T]he First Amendment does not guarantee access to property simply because it is owned or controlled by the government." *United States Postal Serv. v. Council of Greenburgh Civic Ass'n*, 453 U.S. 114, 129, 101 S.Ct. 2676, 2685, 69 L.Ed.2d 517 (1981). The question presented in the instant case is whether the USPS restriction prohibiting campaigning for public office on post office property is a permissible one.

In balancing the government's interest in limiting the use of its property against the interest of those who wish to use the property for expressive activity, the Supreme Court has classified government owned property into three categories: "the traditional public forum, the public forum created by government designation, and the nonpublic forum." *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 802, 105 S.Ct. 3439, 3449, 87 L.Ed.2d 567

**5.** In *Buckley v. Valeo*, the Court struck down legislation limiting campaign expenditures, referring to such expenditures as "core First Amendment expression" since "advocacy of the election or defeat of candidates for federal office is no less entitled to protection under the First Amendment than the discussion of political policy generally or advocacy of the passage or defeat of legislation." 424 U.S. at 48, 96 S.Ct. at 648. Thus the First Amendment "has its fullest and most urgent application precisely to the conduct of campaigns for political office." *Id.* at 15, 96 S.Ct. at 632.

**6.** In *Meyer v. Grant*, the Supreme Court characterized the circulation of an "initiative" petition by proponents of a new law or amendment who may have their proposal placed on the ballot at a general election if they can obtain enough signatures of qualified voters in a six-month period, as "involv[ing] the type of interactive communication concerning political change that is appropriately described as 'core political speech.'" *Meyer*, 486 U.S. at 422, 108 S.Ct. at 1892.

**7.** It is well established that governmental actions are subject to a lower level of First Amendment scrutiny when "the governmental function operating ... [is] not the power to regulate or license, as lawmaker, ... but, rather, as proprietor, to manage [its] internal operation[s]...." *Cafeteria & Restaurant Workers v. McElroy*, 367 U.S. 886, 896, 81 S.Ct. 1743, 1746, 6 L.Ed.2d 1230 (1961). This distinction was reflected in the Supreme Court's opinion in *Lehman v. City of Shaker Heights*, 418 U.S. 298, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974) which upheld a ban on political advertisements in city transit vehicles:

> Here, we have no open spaces, no meeting hall, park, street corner, or other public thoroughfare. Instead, the city is engaged in commerce.... The car card space, although incidental to the provision of public transportation, is a part of the commercial venture. In much the same way that a newspaper or periodical, or even a radio or television station, need not accept every proffer of advertising from the general public, a city transit system has discretion to develop and make reasonable choices concerning the type of advertising that may be displayed in its vehicles.
>
> *Id.* at 303, 94 S.Ct. at 2717.

(1985). Accordingly, the Court established that the ability of the government to restrict First Amendment activity on public property is not absolute but rather depends on "the character of the property at issue." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983).

## A.

In *Perry*, the Supreme Court announced a tripartite framework for determining how First Amendment interests should be analyzed with respect to government property. 460 U.S. at 44–46, 103 S.Ct. at 954–56.[8] In places which by long tradition or by government fiat have been devoted to assembly and debate, the right of the government to limit expressive activity is sharply circumscribed. *Calash v. City of Bridgeport*, 788 F.2d 80, 82 (2d Cir.1986) (quoting *Perry*, 460 U.S. at 45, 103 S.Ct. at 954). At one end of the spectrum are streets and parks which "have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Perry*, 460 U.S. at 45, 103 S.Ct. at 954–55 (quoting *Hague v. CIO*, 307 U.S. 496, 515, 59 S.Ct. 954, 964, 83 L.Ed. 1423 (1939)). In these quintessential public forums, the government authority to regulate speech is limited; in such places communication may not be completely prohibited. *Perry*, 460 U.S. at 45, 103 S.Ct. at 955. For the government to enforce a content-based exclusion, it must demonstrate that the regulation is necessary to serve a compelling state interest and that it is narrowly tailored to achieve that end. *Carey v. Brown*, 447 U.S. 455, 461–62, 100 S.Ct. 2286, 2290–91, 65 L.Ed.2d 263 (1980). The government may also enforce regulations of the time, place and manner of expression which are content-neutral and narrowly tailored to serve "a significant government interest, and leave open ample alternative channels of communication." *Perry*, 460 U.S. at 45, 103 S.Ct. at 955 (citations omitted).

The second category consists of public property opened and designated by the state for use by the public as a place for expressive activity. Courts refer to such fora as "limited" public fora, *Perry*, 460 U.S. at 47, 103 S.Ct. at 956, or public fora "by designation." *Cornelius*, 473 U.S. at 802, 105 S.Ct. at 3449. This type of public forum will often be very narrowly defined since the government does not create a public forum through unconscious, unspoken practices or by permitting limited discourse but "only by intentionally opening a nontraditional forum for public discourse." *Id.; see also Paulsen v. County of Nassau*, 925 F.2d 65 (2d Cir.1991) (Nassau Coliseum held to be a limited public forum).[9] The Constitution forbids the government from enforcing certain exclusions from a forum generally open to the public even if the government was not required to create the forum in the first place. *See Widmar v. Vincent*, 454 U.S. 263, 267–68, 102 S.Ct. 269, 273–74, 70 L.Ed.2d 440 (1981) (university meeting facilities).[10] Although the government need not retain indefinitely the open character of the facility, as long as it does so, First Amendment questions involving these places are controlled by the rules applicable to traditional public fora. *Perry*, 460 U.S. at 46, 103 S.Ct. at 955. Reasonable time,

---

**8.** The Court's three-tiered framework focuses on the purposes and attributes of the forum rather than the speaker's desired audience and has become "the governing paradigm where … a court must ascertain whether to apply strict scrutiny or some less demanding standard." *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 925 F.2d 576 (2d Cir.1991).

**9.** The *Paulsen* court reasoned that once the county opened the stadium grounds to various non-commercial activities, it could not constitutionally ban speech activities such as leafletting.

**10.** A public forum may be created for a limited purpose such as use by certain groups. In *Widmar*, the Supreme Court held that a State University's exclusionary policy toward religious student organizations conducting meetings in school buildings where other student organizations were permitted to conduct meetings violated the principle that a state regulation of speech should be content-neutral.

place and manner regulations are permissible, and a content-based prohibition must be narrowly drawn to effectuate a compelling state interest. *Widmar v. Vincent,* 454 U.S. at 269–270, 102 S.Ct. at 274–75.

The third category consists of nonpublic fora.[11] Such property, which is neither by tradition nor by designation a forum for public communication, is governed by different standards. Property may be designated nonpublic regardless of whether it is owned by a private individual or by a government entity. The Supreme Court has recognized that the "[F]irst Amendment does not guarantee access to property simply because it is owned or controlled by the government." *United States Postal Serv. v. Greenburgh,* 453 U.S. at 129, 101 S.Ct. at 2685. In addition to time, place and manner regulations, the government may reserve a forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view. *Perry,* 460 U.S. at 46, 103 S.Ct. at 955 (citing *Greenburgh,* 453 U.S. at 131, n. 7, 101 S.Ct. at 2686 n. 7). " ' "The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." ' " *Greenburgh,* 453 U.S. at 129–130, 101 S.Ct. at 2685 (quoting *Greer v. Spock,* 424 U.S. 828, 836, 96 S.Ct. 1211, 1217, 47 L.Ed.2d 505 (1976), in turn quoting *Adderley v. Florida,* 385 U.S. 39, 47, 87 S.Ct. 242, 247, 17 L.Ed.2d 149 (1966)).

The plaintiff contends that, although the sidewalk on which he was campaigning is on postal service property, it is not distinguishable from other municipal sidewalks and must therefore be a traditional public forum subject to strict scrutiny. This argument is unpersuasive since the physical characteristics of the property alone cannot dictate forum analysis.[12] *Kokinda,* 110 S.Ct. at 3120. The mere fact that a walkway is a public sidewalk does not in itself identify it as a public forum. *See United States v. Grace,* 461 U.S. 171, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983). Moreover, that a sidewalk is situated on publicly owned property, without more, is insufficient to accord it public forum status, *Monterey County Democratic Central Comm. v. United States Postal Serv.,* 812 F.2d 1194, 1197 (9th Cir.1987), since the "state, no less than a private owner of property, has power to preserve property under its control for the use to which it is lawfully dedicated." *Adderley v. Florida,* 385 U.S. 39, 47, 87 S.Ct. 242, 247, 17 L.Ed.2d 149 (1966).

As the Supreme Court recognized in *Grace,* 461 U.S. at 178, 103 S.Ct. at 1707, the location and the purpose of a publicly owned sidewalk is critical to determining whether such a sidewalk constitutes a public forum. Drawing authority from the *Greer* Court's distinction between the military walkways and the municipal walkways within the military base, the Court in *Grace* constructed a rule stressing the separateness of such military walkways from the municipal ones: the rule allows the government to overcome the presumption that sidewalks are public fora when the

---

**11.** In addition to *Kokinda,* the Supreme Court has found nonpublic fora in the following cases, meriting an inquiry as to reasonableness and content-neutrality: *Cornelius v. NAACP Legal Def. & Educ. Fund,* 473 U.S. 788, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985) (federal workplace not a public forum); *Perry Educ. Assoc. v. Perry Local Educators' Assoc.,* 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983) (interschool mail system not a public forum); *United States Postal Serv. v. Greenburgh,* 453 U.S. 114, 101 S.Ct. 2676, 69 L.Ed.2d 517 (1981) (letterbox not a public forum); *Greer v. Spock,* 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976) (sidewalks in military base not a public forum); *Lehman v. City of Shaker Heights,* 418 U.S. 298, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974) (advertising space in city bus not a public forum); *Adderley v. Florida,* 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966) (prison not a public forum).

**12.** If this were not so, then *Greer v. Spock,* 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976) would have been decided differently. In *Greer,* the Supreme Court held that even though a military base permitted free civilian access to certain unrestricted areas, the base was a nonpublic forum. The presence of sidewalks and streets within the base did not require a finding that it was a public forum. *Id.* 424 U.S. at 836–838, 96 S.Ct. at 1216–18.

federally owned sidewalk obviously is separate from municipal sidewalks, apprising those who approach of the difference. *Grace*, 461 U.S. at 180, 103 S.Ct. at 1708.

The Court in *Grace* was asked to strike down a statute prohibiting certain expressive activities on the Supreme Court grounds and the sidewalk forming the perimeter. The Court distinguished *Greer*, finding that the sidewalks surrounding the Supreme Court retained their public forum status because "[t]here is no separation, no fence, and no indication whatever to persons stepping from the street to the curb and sidewalks that serve as the perimeter of the Court grounds that they have entered some *special type of enclave*." *Id.* (emphasis added). The Court stated that "[t]he sidewalks comprising the outer boundaries of the Court grounds are indistinguishable from any other sidewalks in Washington D.C.," *id.*, 461 U.S. at 179, 103 S.Ct. at 1708, and discerned no reason why they should be treated differently.

■ Postal entryways, like the military walkways at issue in *Greer*, may be open to the public, but that fact alone does not establish that such areas must be treated as traditional public fora under the First Amendment. *Kokinda*, 110 S.Ct. at 3120. In examining a challenge to the ban on solicitation of funds on Post Office property under 39 C.F.R. § 232.1(h)(1), the "enclave" distinction in *Grace* was pivotal to the *Kokinda* Court's designation of the sidewalk at issue as a nonpublic forum. In *Kokinda*, the post office was described as follows:

> [T]he Bowie post office is a freestanding building with its own sidewalk and parking lot. It is located on a major highway, Route 197. A sidewalk runs along the edge of the highway, separating the post office property from the street. To enter the post office, cars enter a driveway that traverses the public sidewalk and enter a parking lot that surrounds the post office building. Another sidewalk runs adjacent to the building itself, separating the parking lot from the building. Postal patrons must use the sidewalk to enter the post office. The

> sidewalk belongs to the post office and is used for no other purpose.

110 S.Ct. at 3118.

The layout of the post office in *Kokinda* is virtually identical to the layout of the post office in Torrington, Connecticut at issue in the instant challenge to 39 C.F.R. § 232.1(h)(1). Both are located on property owned by the Postal Service and are used exclusively for postal service operations. Both lots are surrounded by public, municipal sidewalks and streets, with the buildings separated from those sidewalks and streets by an interior postal walkway, a parking lot, driving lanes and garage space for postal service vehicles. Additionally the interior postal service walkways, adjacent to and leading to the entrance to the post office buildings, provide the only means by which post office customers may travel from the parking lots to the post office buildings. Thus, the Torrington post office walkway, like the post office walkway in *Kokinda*, resembles the "special type of enclave" described as lacking in *Grace*.

In the instant case, the postal sidewalk at issue has no more of the characteristics of public sidewalks traditionally open to expressive activity than the sidewalk scrutinized in *Kokinda*. Unlike traditional municipal sidewalks, the instant sidewalk, like the one in *Kokinda*, runs alongside a post office building that is separated from the municipal property by a parking lot and driving lanes and leads only from the parking area to the front door of the post office. The walkway is 289 feet from Connecticut Route 4, the street running along the front of the postal premises. Further, the property itself is dedicated solely to postal operations. As in *Kokinda*,

> [U]nlike the public street described in *Heffron v. International Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 101 S.Ct. 2559 [69 L.Ed.2d 298] (1981), which was 'continually open, often uncongested, and constitute[d] not only a necessary conduit in the daily affairs of a locality's citizens, but also a place where people [could] enjoy the open air or the company of friends and neighbors in a

relaxed environment,' *id.* at 651, 101 S.Ct. at 2566, the postal sidewalk [which leads only from the parking area to the front door of the post office] was constructed solely to provide the passage of individuals engaged in postal business. 110 S.Ct. at 3120.[13] The postal sidewalk here was constructed for the sole purpose of assisting postal patrons to "negotiate the space between the parking lot and the front door of the post office, not to facilitate the daily commerce and life of the neighborhood or city." *Id.*

The Torrington post office walkway is separated from the municipal sidewalks by the post office parking area. "The isolated nature of the building and the surrounding walkway indicate to all who approach that the walkway services postal patrons entering the building and that it is not a thoroughfare for passersby intent on other errands." *Monterey County*, 812 F.2d at 1197. This fact is sufficient to overcome the presumption of public forum status otherwise accorded sidewalks. It is evident to all who enter the property that "they have entered some special type of enclave," *Grace*, 461 U.S. at 180, 103 S.Ct. at 1708, dedicated to a specific business function. Thus, the right of access under consideration in the instant case is not the quintessential public sidewalk addressed in *Frisby v. Schultz*, 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988) (residential sidewalk held to be a public forum).

 The plaintiff argues that even if the sidewalk is not a traditional public forum, the government's attempt to regulate its use for expressive activities must still be analyzed under the rules applicable to public fora because the Postal Service transformed the walkway into a limited public forum by permitting certain groups to use postal premises for expressive activities. This court again disagrees. The crit-

ical factor in deciding whether the government has created a limited public forum is its intention. The "government does not create a public forum ... by permitting limited discourse, but only by *intentionally* opening a non-traditional forum for public discourse." *Cornelius*, 473 U.S. at 802, 105 S.Ct. at 3449 (emphasis in original.) Accordingly, the Court has looked to the policy and practice of the government to ascertain whether it intended to designate a place not traditionally open to assembly and debate as a public forum. *Perry*, 460 U.S. at 47, 103 S.Ct. at 956.

 In the instant case, at no time did the postal service open wide the doors to indiscriminate use by the public. The postal service has not explicitly dedicated its sidewalks to any expressive activity. Admittedly, individuals or groups have been permitted to leaflet, speak and picket on postal premises. However, a practice of allowing some speech activities on postal property does not add up to the dedication of postal property to speech activity. *Kokinda*, 110 S.Ct. at 3121. "Selective access does not transform government property into a public forum." *Id.* (quoting *Perry*, 460 U.S. at 47, 103 S.Ct. at 956). Here the uses made of the property were limited, and such "selective access, unsupported by evidence of a purposeful designation for public use, does not create a public forum." *Greer*, 424 U.S. at 838, n. 10, 96 S.Ct. at 1217, n. 10.[14] This court thus finds that the postal walkway at issue in the instant challenge is a nonpublic forum.

### B.

 Because the Torrington Post Office walkway is not a traditional or limited public forum open to the plaintiff, it falls into the third class of property, a nonpublic forum, thus obviating the need to determine whether the regulation is sup-

---

13. In holding that a regulation requiring members of the International Association of Krishna Consciousness to confine their distribution, sales, and solicitation activities to a fixed location, the Court in *Heffron* compared the continuing openness of a public street with the temporary nature of the fair grounds. 452 U.S. at 650, 101 S.Ct. at 2565.

14. Even if a limited public forum had been created, the government is not required to maintain the character of the forum indefinitely but may withdraw the designation of particular property as a limited public forum. *Perry*, 460 U.S. at 46, 103 S.Ct. at 955.

ported by a compelling government interest. Rather, the rules governing nonpublic fora apply, necessitating instead a determination as to whether the regulation on campaigning is reasonable [15] as well as content-neutral, i.e., not simply a mask for Postal Service opposition to the plaintiff's views.[16] The defendant asserts that the prohibition against campaigning for public office on postal premises is content-neutral and reasonable for two reasons. First, such a complete ban on campaigning insulates the postal service from politics. Specifically, the ban on political campaigning ensures that the Postal Service remains removed from partisan politics, that it does not *appear* to be influenced by politics, and that the public trust in a nonpartisan Postal Service is reaffirmed.[17] Secondly, the ban on political campaigning prevents the disruption of the operations and primary functions of the postal service. This court finds neither of these arguments persuasive.

### 1. *The Lack of Content Neutrality*

 As noted in *Monterey County,* government control over nonpublic fora includes:

[t]he right to make distinctions in access on the basis of subject matter and speaker identity. These distinctions may be impermissible in a public forum but are inherent and inescapable in the process of limiting a nonpublic forum to activities compatible with the intended purpose of the property. The touchstone for evaluating these distinctions is whether they are reasonable in light of the purpose which the forum at issue serves.

812 F.2d at 1198 (quoting *Perry,* 460 U.S. at 49, 103 S.Ct. at 957). *See also Cornelius,* 473 U.S. at 808, 105 S.Ct. at 3452. In the instant case, there is no evidence that the post office regulation is intended to encourage or discourage one political viewpoint over another. Thus, the defendant asserts that by excluding *all* political campaigning, the post office is not granting to "one side of a debatable public question ... a monopoly in expressing its views....." *City of Madison Joint School Dist. No. 8 v. Wisconsin Employment Relations Comm'n,* 429 U.S. 167, 175, 97 S.Ct. 421, 426, 50 L.Ed.2d 376 (1976). The exclusion of all political campaigning, however, does not make the regulation content-neutral. Any restriction on speech relating to the substance of the speech is content-based, no matter what the government's interest may be. *Boos v. Barry,* 485 U.S. 312, 335–338, 108 S.Ct. 1157, 1171–73, 99 L.Ed.2d 333 (1988) (Brennan, J., concurring in part and concurring in judgment). Here, the regulation is not content-neutral because it is tied explicitly to the content of the speech. The solicitation of signatures on a petition bearing *no* relation to politics is permitted on postal premises whereas the solicitation of signatures in a political campaign is prohibited. Thus, the prohibition depends entirely upon the content of the petition.

The government argues that its interest in this case is related to the suppression of expression because the evil at which the postal regulation is aimed is the danger of political affiliation and the disruption of the operations and primary functions of the postal service which would result from an-

---

**15.** "The government's decision to restrict access to a nonpublic forum need only be *reasonable;* it need not be the most reasonable or the only reasonable limitation." *Cornelius,* 473 U.S. at 808, 105 S.Ct. at 3452.

**16.** Although a speaker may be excluded from a nonpublic forum if he wished to address a topic not encompassed within the purpose of the forum, *Lehman v. City of Shaker Heights,* 418 U.S. 298, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974), or if he is not a member of the class of speakers for whose benefit the forum was created, *see Perry,* 460 U.S. at 49, 103 S.Ct. at 957, the government violates the First Amendment when it denies

access to a speaker solely to suppress the point of view he espouses on an otherwise includable subject. *Cornelius,* 473 U.S. at 806, 105 S.Ct. at 3451.

**17.** With respect to this third politically related concern, the defendant has failed to allege any facts which, if proved, might show that public confidence in the system would be diminished by partisan political activity. *See Consol. Edison Co. v. Public Serv. Comm'n,* 447 U.S. 530, 543, 100 S.Ct. 2326, 2336, 65 L.Ed.2d 319 (1980) ("mere speculation of harm does not constitute a compelling state interest.")

noying postal customers and discouraging them from patronizing the postal offices. *See Kokinda,* 110 S.Ct. at 3134 (Brennan, J., dissenting). The Post Office is concerned that being asked to endorse a political candidate may be annoying to some people, particularly when the campaigner is a member of a disfavored political persuasion. The defendant makes much of the complaints received at the Torrington Post Office while the plaintiff was soliciting signatures. Memorandum in Support of Defendants' Motion for Summary Judgment, at 8 (filing 24). The record, however demonstrates no complaints related to any difficulty in obtaining access to the post office. Although the Postal Service's paternalism may be well intended, a listener's reaction to speech is not a content-neutral basis for regulation. Speech is not subject to regulation " 'simply because it may embarrass others or coerce them into action.' " *Hustler Magazine, Inc. v. Falwell,* 485 U.S. 46, 55, 108 S.Ct. 876, 882, 99 L.Ed.2d 41 (1988), (quoting *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 910, 102 S.Ct. 3409, 3424, 73 L.Ed.2d 1215 (1982).[18]

### 2. *The Reasonableness of the Regulation*

The reasonableness of the Government's restriction of access to a nonpublic forum must be assessed in light of the purpose of the forum and all the surrounding circumstances. *Cornelius,* 473 U.S. at 808, 105 S.Ct. at 3452. Although avoiding the appearance of political favoritism and preventing the obstruction of post office entrances and the disruption of postal functions are valid justifications for limiting speech in a nonpublic forum, *see Greer v. Spock,* 424 U.S. at 839, 96 S.Ct. at 1218; *Lehman v. City of Shaker Heights,* 418 U.S. at 304, 94 S.Ct. at 2717, the distinction drawn by the postal regulation between signature solicitation for non-political reasons and political signature solicitation is not a reasonable one.

The plaintiff correctly asserts that the regulation, with respect to the elimination of obstructions to entry into the post office building and the disruptions of postal functions, is underinclusive. The regulation is underinclusive in that the postal service does not subject to the same categorical prohibition many other types of signature solicitation presenting the same risk of obstruction and disruption. The regulation permits other expressive activities that harbour the same potential for obstruction and disruption, i.e., voter registration by nonpartisan organizations and signature gathering for purposes other than campaigning. For this reason, not only is this a content-based exclusion; it is unreasonable as well.

Moreover, the ban on the solicitation of funds upheld by the Supreme Court in *Kokinda* is distinguishable from the ban on the solicitation of campaign signatures in the instant case. As the Court in *Kokinda* noted, solicitation of alms or contributions requires a distinct action by those who would respond. "The individual solicited must decide whether or not to contribute (which itself might involve reading the solicitor's literature or hearing his pitch), and then, having decided to do so, reach for a wallet, search it for money, write a check, or produce a credit card." *Kokinda,* 110 S.Ct. at 3123. Thus, soliciting funds is an inherently more intrusive and disruptive activity than soliciting campaign signatures, where all that is required is a signature on a petition rather than a search for a wallet, a checkbook or a credit card. The distinction between the solicitation of funds and the solicitation of signatures in a political campaign is supported by the second circuit's recent holding "that the Port Authority must provide reasonable access to the [airline] terminals for the distribution of literature." *Int'l Soc'y for Krishna Consciousness v. Lee,* 925 F.2d 576 (2nd

---

**18.** The Postal Service's desire to protect customers from speech with which they might disagree would not be a valid basis for regulation. Although the Supreme Court has held that speech in a nonpublic forum may be regulated so as to prevent disruption of the forum, *Cornelius,* 473 U.S. at 811, 105 S.Ct. at 3453, a restriction cannot be premised on the mere fact that some members of the public might disapprove of a speaker's message or means of delivery. Such expression "is still protected speech even in a nonpublic forum." *Airport Comm'rs v. Jews for Jesus,* 482 U.S. 569, 576, 107 S.Ct. 2568, 2573, 96 L.Ed.2d 500 (1987). *Kokinda,* 110 S.Ct. 3115, 3138, n. 13. (Brennan, J., dissenting).

Cir.1991).[19] In *Lee,* the second circuit interpreted *Kokinda* to allow the distribution of literature, or leafletting, in nonpublic fora such as postal walkways or airline terminal walkways, in contrast to the solicitation of funds.[20] Indeed, the critical distinction in *Kokinda* was the inherent disruptiveness and intrusiveness of the solicitation of funds as opposed to other forms of expressive activity. Thus the *Kokinda* analysis of the reasonableness of the ban on solicitation of funds is inapplicable to the instant case.

Political campaigning, i.e., the solicitation of signatures in a political campaign, is no *more* intrusive than other forms of signature solicitation or distribution of literature that are permitted in the post office. Moreover, political campaigning is far *less* obtrusive than the political rallies[21] referred to by Justice Brennan[22] or the non-political demonstrations such as support for the war or anti-war rallies seen recently or pro-choice or pro-life rallies, none of which are prohibited on post office premises.

This *inconsistent* treatment renders the prohibition on campaigning unreasonable. As stated, the postal service undeniably has a legitimate interest in avoiding political favoritism, avoiding disruption of its postal facilities, and ensuring that its buildings remain accessible to the public. The government interest in preventing disruption of post office business or harassment of postal patrons, however, is addressed by the direct prohibitions on such conduct in existing postal rules[23] and the Postal Ser-

19. The *Lee* court, relying on *Kokinda,* rejected the views of other circuits, holding that airport terminals are not public fora because they are remote from pedestrian thoroughfares and are intended solely to facilitate air travel. Thus the court held that the solicitation of funds may be banned in the terminals, whereas the distribution of leafletting must be permitted.

20. The *Lee* court analyzed the Justices' position in *Kokinda* on expressive activities other than the solicitation of funds in nonpublic fora as follows:

The four dissenting justices believed the sidewalk to be a public forum and additionally indicated that they perceived no relevant distinction between the in-person solicitation of funds and the distribution of leaflets. See 110 S.Ct. at 3126–39. They would therefore allow the latter in the air terminals in question. So too, we believe, would Justice Kennedy, whose concurring opinion stressed the need "to protect public places where traditional modes of speech and forms of expression can take place." 110 S.Ct. at 3125. Justice Kennedy relied entirely upon the distinction between the disruptive effect of the in-person solicitation of funds and the lesser inconvenience of the distribution of literature in upholding the Postal Service regulation and did not reach the public/nonpublic forum issue. We thus count him as having adopted a view that would permit the distribution of literature in the instant matter. We also note that the four justices who considered the post office sidewalk to be a nonpublic forum also relied in part on the distinction between in-person solicitation of funds and leafletting in upholding the regulation. See 110 S.Ct. at 3123. There was thus at least a majority, and perhaps more, that would allow the latter.

*Int'l Soc'y of Krishna Consciousness v. Lee,* 925 F.2d 576 (2d Cir.1991).

21. The authorization for political rallies to be held on post office premises flies in the face of the defendants' contention that the goal of the instant regulation is to prevent political favoritism. Not only is political campaigning less obtrusive and disruptive than political rallies; the potential for political favoritism in the former situation is much less than in the latter.

22. In his dissent in *Kokinda,* Justice Brennan correctly asserted that:

[a] solicitor who asks for funds and offers literature for sale outside the entrance to a post office is no more likely to block access than is a leafletter who stands in the same place or a speaker who sets up his soapbox there. In fact, solicitors may be quite unlikely to attract much of an audience.... Under the regulation, a group may stage a political rally to call attention to the problem of drug abuse and draw hundreds or even thousands of persons to an area just outside the entrance to the post office, because there is no general prohibition on large gatherings on postal premises.

*Kokinda,* 110 S.Ct. at 3137 (Brennan, J., dissenting) (footnotes omitted).

23. Post office rules prohibit individuals from obstructing post office entrances, disturbing postal employees in the performance of their duties, or impeding the public in the transaction of postal business. For example, Section 232.-1(e) provides that:

Disorderly conduct, or conduct which creates loud and unusual noises, or which obstructs the usual use of entrances, foyers, corridors, offices, elevators, stairways, and parking lots,

vice has not explained why these provisions are inadequate to deal with any such disruptions caused by campaigning.

## CONCLUSION

For the foregoing reasons, the ban on campaigning for public office on post office premises is neither reasonable nor content-neutral. Therefore, this court finds 39 C.F.R. 232.1(h) to be invalid to the extent that it forbids such campaigning on exterior post office sidewalks. Accordingly, the plaintiff's motion for summary judgment is granted and the defendant's motion for summary judgment is denied.

SO ORDERED.

or which otherwise tends to impede or disturb the public employees in the performance of their duties, or which otherwise impedes or disturbs the general public in transacting business or obtaining the service provided on property, is prohibited.

39 C.F.R. 232.1(e). Similarly, subsection (k)(2) prohibits "[t]he blocking of entrances, driveways, walks, loading platforms, or fire hydrants in or on [postal] property." See also § 232.1(c) which prohibits "creating any hazard to persons or things."