**Frank LONGO, Appellee,**

v.

**UNITED STATES POSTAL SERVICE, et al., Appellants.**

**No. 374, Docket 91–6141.**

United States Court of Appeals, Second Circuit.

Argued Oct. 23, 1991.

Decided Jan. 13, 1992.

Andrew G. McBride, Associate Deputy Atty. Gen., (Stuart M. Gerson, Asst. Atty. Gen., Douglas N. Letter and Marc Richman, Attys., Dept. of Justice, Washington, D.C.; and Richard Palmer, U.S. Atty., Bridgeport, Conn., on the brief), for appellants.

Martin Margulies, Bridgeport, Conn., for appellee.

Before TIMBERS, WINTER and WALKER, Circuit Judges.

TIMBERS, Circuit Judge:

Appellants United States Postal Service and Alden Victoria, in his official capacity as Postmaster of the Torrington Post Office ("the Postal Service"), appeal from a

summary judgment entered April 8, 1991 in the District of Connecticut, Alan H. Nevas, District Judge, granting appellee Frank Longo summary judgment on his claim for declaratory and injunctive relief from a Postal Service regulation prohibiting campaigning for election to public office on Postal Service property on the ground that the regulation violated Longo's rights under the First Amendment on its face and as applied. In a comprehensive, well considered opinion, the district court held that the regulation, 39 C.F.R. § 232.1(h)(1) (1990), is invalid to the extent that it prohibits campaigning on the interior post office walkway. 761 F.Supp. 220 (D.Conn. 1991).

On appeal, the government asserts that the district court correctly determined that the Postal Service property in question is a nonpublic forum, but contends that it erred in concluding that the regulation at issue is an unconstitutional restraint on expressive activity. Longo contends that the district court properly declared the regulation unconstitutional to the extent that it prohibits campaigning for election to public office on the interior post office sidewalk; he also contends that the property in question is a public forum and that the regulation therefore should be reviewed under the strictest level of scrutiny.

For the reasons that follow, we reverse the district court's summary judgment which held that the prohibition set forth in § 232.1(h)(1) against campaigning for election to public office on an interior post office walkway is unconstitutional.

## I.

The facts are not in dispute. They were set forth clearly in the district court's opinion. We summarize only those facts and proceedings believed necessary to an understanding of the issues raised on appeal.

In 1988, Frank Longo attempted to run for the United States Senate as an independent candidate from the State of Connecticut. Longo had to obtain approximately 9,800 signatures in order to get on the ballot. On May 25, 1988, Longo set up a table and chair on the postal walkway adjacent to the entrance to the Post Office Building in Torrington. He began to solicit signatures in support of his candidacy. Postmaster Alden Victoria informed him that his action violated the Postal Service regulation set forth in 39 C.F.R. § 232.1(h)(1), which prohibits "campaigning for election to any public office." After the postmaster asked him to leave the premises, and after the postmaster showed him a copy of the regulation, Longo refused to leave. When Longo continued to ignore the postmaster's request, he was arrested by the Torrington Police and charged with criminal trespass. On July 13, the charges against Longo were dropped in exchange for his promise to cease his campaign activities on postal property. Longo nevertheless returned to the same walkway on four occasions to solicit signatures. Several postal patrons complained that Longo was abusive when they refused to sign his petition or when they questioned his use of postal property for his signature campaign.

On August 12, Longo commenced this action seeking declaratory and injunctive relief. He asked that the postal regulation be declared unconstitutional as violative of the First Amendment's protection of freedom of speech and that further enforcement of the regulation be enjoined. He challenged the validity of the regulation on its face and as applied to him. As the district court found, the Torrington Post Office is located on property which is owned by the Postal Service. It is used exclusively for postal service operations. The interior postal walkway on which Longo attempted to solicit signatures for his campaign is adjacent to the entrance to the post office building. The walkway lies 289 feet from the nearest public thoroughfare, from which it is separated by the Post Office parking lot, driving lanes, and garage space for postal vehicles.

By the mutual agreement of the parties, Longo's action was stayed pending the Supreme Court's resolution of a similar issue in *United States v. Kokinda*, 110 S.Ct. 3115 (1990). In *Kokinda*, the Court addressed the constitutionality of the prohibi-

tion set forth in 39 C.F.R. § 232.1(h)(1) against "[s]oliciting alms and contributions" on postal property. *Kokinda* involved a postal walkway that is similar in all material respects to the walkway on which Longo attempted to solicit signatures for his campaign for the United States Senate. The Court found that the regulation prohibiting the solicitation of alms and contributions was constitutional. A plurality of four (opinion by O'Connor, J.) held that the walkway was a nonpublic forum and that the regulation was a reasonable, viewpoint-neutral restraint on First Amendment activity. Justice Kennedy, without categorizing the walkway in question as a specific type of forum, concluded that the regulation was an appropriate time, place and manner restriction. *Id.* at 3125.

## II.

Since the facts are not in dispute, our task is to determine whether the district court correctly applied the law in granting Longo's motion for summary judgment. *City of Yonkers v. Otis Elevator Co.,* 844 F.2d 42, 45 (2 Cir.1988); Fed.R.Civ.P. 56(c). We hold that the district court erred in determining that the postal regulation at issue unconstitutionally prohibited Longo from campaigning for public office on postal property. We find that the regulation is a valid time, place and manner restriction on speech activity.

## III.

### (A)

█ It is undisputed that Longo's solicitation of signatures is a form of speech protected by the First Amendment. *See Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 629 (1980); *Buckley v. Valeo,* 424 U.S. 1, 15 (1976). "Even protected speech," however, "is not equally permissible at all times." *Cornelius v. NAACP Legal Defense & Educational Fund,* 473 U.S. 788, 789 (1985).

█ The Supreme Court has developed a tripartite framework for analyzing First Amendment issues that arise when the government attempts to regulate expression on government property. This analysis focuses on the nature of the forum that the government seeks to regulate. Regulation of speech activity on property that traditionally has been open to the public for expression activity is subject to close scrutiny. *Perry Education Assn. v. Perry Local Educators' Assn.,* 460 U.S. 37, 45 (1983). "Public fora" are generally of the nature described by Justice Roberts when he stated:

"Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions."

*Hague v. C.I.O.,* 307 U.S. 496, 515 (1939). In these public fora the government may exclude communicative activity based on its content only if it can show that the regulation is necessary to serve a compelling state interest and is narrowly tailored to achieve that end. *Perry, supra,* 460 U.S. at 45; *Carey v. Brown,* 447 U.S. 455, 461–62 (1980).

█ The government also may enforce content-neutral time, place and manner restrictions in such public fora provided they are narrowly tailored to serve a significant government interest and alternative means of communication are left open. *Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989); *Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 293 (1984); *Perry, supra,* 460 U.S. at 45. This same standard of scrutiny is applied to property that the government has dedicated to speech. *Perry, supra,* 460 U.S. at 46. As the district court stated, "the government does not create a public forum through unconscious, unspoken practices or by permitting limited discourse but 'only by intentionally opening a nontraditional forum for public discourse.'" *Longo, supra,* 761 F.Supp. at 226 (quoting *Cornelius, supra,* 473 U.S. at 802); *see also Paulsen v. County of Nassau,* 925 F.2d 65, 69 (2 Cir.1991). Such areas when so dedicated by the government are referred to alternatively as

"limited" public fora, *Perry, supra,* 460 U.S. at 47, or as "designated" public fora, *Cornelius, supra,* 473 U.S. at 802. Nonpublic fora, those which are neither a traditional nor dedicated public forum, are subject to a different standard of review. Regulation of speech activity on such property must be *reasonable* and not based on the *viewpoint* of the speaker. *United States v. Kokinda,* 110 S.Ct. 3115, 3121 (1990) (plurality opinion); *Perry, supra,* 460 U.S. at 46.

In *Kokinda,* the plurality of four justices (opinion by O'Connor, J.) found that the postal walkway in question was a nonpublic forum and held that the regulation was both reasonable and viewpoint-neutral. Justice Kennedy joined in the judgment of the plurality, but stated that the forum analysis applied by the plurality fails adequately to protect First Amendment interests. Although Justice Kennedy did not definitively find that the postal walkway was a public forum, he stated that "heightened First Amendment protection" was appropriate in order "to protect public places where traditional modes of speech and forms of expression can take place." *Kokinda, supra,* 110 S.Ct. at 3125. Justice Kennedy joined in the judgment of the plurality because he found that § 232.-1(h)(1)'s prohibition of "[s]oliciting alms or contributions," was an appropriate time, place, and manner restriction on protected speech. *Id.* at 3125–26.

In our recent decision in *International Soc'y For Krishna Consciousness, Inc. v. Lee,* 925 F.2d 576 (2 Cir.1991), *cert. granted,* 112 S.Ct. 855, (1992) we did not reach the issue of whether airport terminals are traditional, designated, or nonpublic fora. Instead, we upheld a prohibition on the in-person solicitation of funds in airport terminals because it satisfied the criteria set forth by both the plurality and Justice Kennedy in *Kokinda.* Similarly, since we find that the postal regulation here involved is an appropriate time, place and manner restriction, it is unnecessary to categorize the postal walkway as a particular type of forum.

(B)

■ Time, place or manner restrictions on expressive activity are constitutional, regardless of the type of forum involved, provided they are reasonable. *Perry, supra,* 460 U.S. at 46; *Heffron v. International Soc'y For Krishna Consciousness,* 452 U.S. 640, 647 (1981); *Consolidated Edison Co. v. Public Service Comm'n,* 447 U.S. 530, 536 (1980); *Grayned v. City of Rockford,* 408 U.S. 104, 115 (1972). The Supreme Court has developed a test for determining whether a time, place or manner restriction is in fact reasonable: it must be narrowly tailored to serve a significant government interest, alternative means of communication must be left open, and the restriction on speech must be content-neutral. *Rock Against Racism, supra,* 491 U.S. at 791; *Clark, supra,* 468 U.S. 293; *Heffron, supra,* 452 U.S. at 648.

■ The postal regulation involved in the instant case is justified by different purposes than was the regulation in *Kokinda.* The primary justification for the prohibition against campaigning on postal property is that it enables the Postal Service to avoid both actual entanglement in partisan politics and the appearance of political favoritism. Longo asserts that there is insufficient basis for a conclusion that such entanglement would occur absent the regulation at issue. The validity of the regulation, however, "need not be judged solely by reference to the [expressive activity] at hand." *Clark, supra,* 468 U.S. at 296–97.

If campaigning for public office on postal property were not prohibited, the Postal Service surely would be beset by requests from eager politicians competing for time and space in the most strategic locations possible, such as the postal walkway involved in this case. Postmasters therefore would be hard pressed to avoid the sort of embroilment in partisan politics that Congress tried to prevent when it reorganized the Postal Service in 1970. *See* H.R.Rep. No. 1104, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Admin.News 3649, 3661 ("[O]ne of the cardinal needs of postal reform is to seal off the Postal Ser-

vice from partisan political influence."); *Id.* at 3654 ("If the American public is to have the postal service that it expects and deserves, the Post Office must be taken out of politics and politics out of the Post Office."). Also, the Supreme Court has upheld the provision of the Hatch Act, 5 U.S.C. § 7324(a)(2) (1982), which forbids federal employees from playing "an active part in political management or in political campaigns." *United States Civil Service Comm'n v. National Ass'n of Letter Carriers,* 413 U.S. 548 (1973) (upholding same language).

Moreover, on several occasions the Supreme Court has recognized that the avoidance of partisan entanglement or the appearance of political favoritism is a valid justification for restricting First Amendment speech activities. *E.g., Cornelius, supra,* 473 U.S. at 809 ("[A]voiding the appearance of political favoritism is a valid justification for limiting speech in a nonpublic forum."); *Greer v. Spock,* 424 U.S. 828, 839 (1976) ("[K]eeping official military activities there wholly free of *entanglement with partisan political campaigns of any kind*" deemed "a policy that the military authorities at Fort Dix were constitutionally free to pursue.") (emphasis added); *Lehman v. City of Shaker Heights,* 418 U.S. 298, 304 (1974) ("[L]urking doubts about favoritism, and sticky administrative problems [that] might arise in parceling out limited space to eager politicians" helped justify a policy of not permitting political advertising while permitting other types of advertising on city's mass transit cars.).

We therefore hold that the Postal Service's interest in avoiding partisan political entanglement and the appearance of political favoritism is at least as significant as the governmental interests in "preventing 'visual blight' in its cities, *Members of City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 810 (1984), in 'maintaining [public] parks ... in an attractive and intact condition,' *Clark, supra,* 468 U.S., at 296, and in 'avoiding congestion and maintaining the orderly movement' of persons using a public forum, *Heffron v. International Society for Krishna Con-*

*sciousness, Inc.,* 452 U.S. 640, 652 (1981)...." *Kokinda, supra,* 110 S.Ct. at 3126 (Kennedy, J., concurring) (parallel citations omitted).

We next consider whether the prohibition set forth in § 232.1(h)(1) against "campaigning for election to any public office" is narrowly tailored to achieve its desired purpose and whether it leaves open adequate alternative channels for communication. We find that the postal regulation meets both of these criteria.

We recognize that a complete ban on a category of speech activity generally is considered narrowly tailored "only if each activity within the proscription's scope is an appropriately targeted evil." *Frisby v. Schultz,* 487 U.S. 474, 485 (1988). In *Frisby,* the Court cited *Vincent, supra,* 466 U.S. at 789, as an example of a complete ban that was constitutional. The *Frisby* Court stated that the regulation in *Vincent,* which banned all signs on public property, was constitutional because the interest supporting the regulation, avoiding visual blight, rendered each sign a targeted evil. *Frisby, supra,* 487 U.S. at 485–86 (citing *Vincent, supra,* 466 U.S. at 810); *see also Clark, supra,* 468 U.S. at 297.

Just as some types of signs would create less visual blight than others, some forms of political campaigning, such as the handing out of leaflets, no doubt would cause less physical disruption of postal activities and would put less pressure on the Postal Service to handle competing demands for time and space, than did Longo's attempt to solicit signatures. They would all risk, however, embroiling the Postal Service in partisan politics to some degree. Furthermore, other types of campaigning, such as the setting up of campaign displays or the staging of mini-rallies would disrupt postal activities and entangle the Postal Service in partisan politics even more than Longo's attempts to solicit signatures. The regulation therefore properly focuses on the "targeted evil". It does not proscribe a wide range of other speech activity, such as the discussion of political issues, or the expression of one's views on an upcoming election and the candidates who are running there-

in. We hold that the prohibition of campaign activity on postal premises in § 232.-1(h)(1) is sufficiently narrow to pass scrutiny.

The postal regulation also leaves open adequate alternative means of communication. As stated above, the regulation allows members of the public to engage in a wide variety of expressive activity. It only prohibits campaigning for public office on postal property. Politicians remain free to campaign on any street, sidewalk, park or other traditional public forum, and they may utilize the various news media and the mail as well. *Clark, supra,* 468 U.S. at 295.

We turn now to the final criteria for measuring the reasonableness of time, place and manner restrictions: content neutrality.

The term "content" embodies several related, yet different, concepts. In *Police Department of Chicago v. Mosley,* 408 U.S. 92 (1972), the Court stated that restrictions on speech should not "restrict expression because of its message, its ideas, its subject matter, *or* its content." *Id.* at 95 (emphasis added). Although in *Mosley* the Court spoke of "content" in the alternative, all of the factors referred to in *Mosley* as impermissible bases for restrictions on expression have fallen under the rubric of "content". The *Mosley* court itself stated that "[t]he essence of this forbidden censorship is content control." *Id.* at 96.

Restrictions on expression because of disagreement with message or idea being conveyed by the speaker clearly violate the First Amendment. Such viewpoint-based restrictions would "completely undercut the 'profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open.'" *Id.* (quoting *New York Times Co. v. Sullivan,* 376 U.S. 254, 270 (1964)). Indeed, viewpoint-based restrictions are viewed as more threatening to First Amendment rights than are other forms of content-based restrictions on speech. Under the tripartite forum analysis the Supreme Court has adopted in recent years, reasonable restrictions on expression in a non-public forum are constitutional provided only that they not discriminate on the basis of *viewpoint;* other forms of *content* discrimination are permissible. *E.g., Kokinda, supra,* 110 S.Ct. at 3121; *Perry, supra,* 460 U.S. at 46. Even with time, place, and manner restrictions on speech in a public forum, the Court has at times focused on viewpoint neutrality. *E.g., Rock Against Racism, supra,* 491 U.S. at 791 ("The principal inquiry in determining content neutrality, in speech cases generally, and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys."). The distinction between content and viewpoint neutrality, however, occasionally is blurred. *See, e.g., Clark, supra,* 468 U.S. at 295 (Park regulation permitting camping only in certain areas of the park "clearly satisfied" requirement that it be "content-neutral" because it was "not being applied because of disagreement with the message presented."); *U.S. Postal Service v. Council of Greenburgh Civic Assns.,* 453 U.S. 114, 135 (1981) (Postal regulation prohibiting unstamped "mailable matter" in a letter box "is content-neutral because it is not directed at the content of the message appellees seek to convey....") (Brennan, J., concurring).

A viewpoint-based restriction on expressive activity, however, is not the only form of impermissible content control. Regulations that foreclose discussion of a particular subject matter entirely (i.e. regardless of viewpoint), or that allow expression relative to some topics but not to others, have been held unconstitutional as content-based restrictions. *E.g., Widmar v. Vincent,* 454 U.S. 263 (1981) (University's regulation prohibiting the use of the University's buildings or grounds "for purposes of religious worship or religious teaching" held unconstitutional as a content-based restriction on speech); *Carey v. Brown,* 447 U.S. 455 (1980) (Regulation allowing peaceful labor picketing but prohibiting other types of peaceful picketing held unconstitutional as

based on the content of the speech.); *Mosley, supra,* 408 U.S. 92 (same).

In *Consolidated Edison Co. v. Public Service Comm'n,* 447 U.S. 530 (1980), the Court recognized that such restrictions on speech are more precisely described as based on subject matter rather than "content." *Id.* at 536 (citing *Mosley, supra,* 408 U.S. at 99). The Court held that the regulation prohibiting the inclusion, in monthly bills, of inserts discussing controversial issues of public policy was based on subject matter and therefore violated the First Amendment. The First Amendment prohibits the regulation of speech based on subject matter because the government must not be allowed to "select which issues are worth discussing or debating...." *Mosley, supra,* 408 U.S. at 96; *see also Consolidated Edison, supra,* 447 U.S. at 538 ("To allow a government a choice of permissible subjects for public debate would be to allow that government control over the search for political truth.").

The prohibition set forth in § 232.1(h)(1) against "campaigning for election to any public office" on postal property is decidedly viewpoint neutral. Whether a candidate is a member of the Republican, Democratic, Libertarian or other party, and whether he or she espouses a philosophy that strikes a resonant chord with conservatives or liberals, he or she is not allowed to campaign on postal property. The regulation, however, is somewhat based on subject matter. It prohibits only speech activity that constitutes "campaigning for election to public office," while other speech activity, such as the handing out of leaflets in support of a cause, is allowed.

Although the regulation thus is content-based, when the term "content" is given its most inclusive construction, the blanket prohibition against campaigning does not reflect an attempt by the government to select the subjects that may be discussed publicly, *c.f. Mosley, supra,* 408 U.S. at 96, nor does it in any way suggest that the government is attempting to "control the search for political truth." *C.f. Consolidated Edison, supra,* 447 U.S. at 538.

Moreover, the Supreme Court has recognized that "in narrow circumstances ... the government may bar from its facilities certain speech that would disrupt the legitimate governmental purpose for which the property has been dedicated." *Id.* at 538–39 (citing *Greer v. Spock,* 424 U.S. 828 (1976) and *Lehman v. City of Shaker Heights,* 418 U.S. 298 (1974)). Specifically, in both *Greer* and *Lehman,* the Supreme Court upheld the constitutionality of restrictions that singled out partisan political speech, while allowing speech as to other subject matters, because such partisan speech would disrupt the legitimate purpose to which the property had been dedicated. *See Consolidated Edison, supra,* 447 U.S. at 538–39 (discussing *Greer* and *Lehman*).

We therefore find that, in view of the nature of the governmental interest served by the regulation prohibiting campaigning on postal property and the fact that the regulation neither discriminates on the basis of viewpoint nor restricts the scope of the public debate, the regulation is sufficiently content-neutral to pass scrutiny as a reasonable time, place and manner restriction.

This Postal Service regulation is a reasonable time, place and manner restriction on protected speech on postal walkways. It serves a significant governmental interest, is narrowly tailored to achieve its objective, and leaves open adequate alternative means of communication. Furthermore, the regulation does not discriminate on the basis of viewpoint, nor does it reflect an attempt to regulate the scope of public debate. We therefore hold that the prohibition in 39 C.F.R. § 232.1(h)(1) against "campaigning for election to any public office" is a valid restraint on expression.

## IV.

■ Longo also challenges the postal regulation on its face, asserting that the regulation's proscription against campaigning is so overbroad that it would have a deterrent effect on free expression. Under *Broadrick v. Oklahoma,* 413 U.S. 601, 615 (1973), "the overbreadth of a statute [or

regulation] must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." Although "[t]he concept of 'substantial overbreadth' is not readily reduced to an exact definition ... [i]t is clear, however, that the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Vincent, supra,* 466 U.S. at 800.

In the instant case, Longo does little more than suggest that there could be applications of the proscription in § 232.1(h)(1) against campaigning on postal property that would prove unconstitutional. In light of this we abide by the general rule that "a litigant only has standing to vindicate his own constitutional rights." *Id.* Longo's facial challenge of the postal regulation therefore is dismissed.

### V.

To summarize:

The district court erred in determining that the postal regulation prohibiting campaigning for public office on postal property violates the First Amendment as applied to postal walkways. We hold that the regulation survives constitutional scrutiny as an appropriate time, place and manner restriction.

We reverse.